# EXHIBIT A

E-FILED IN OFFICE - KC
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

24-A-00569-5
1/19/2024 4:33 PM
TIANA P. GARNER, CLERK

## General Civil and Domestic Relations Case Filing Information Form

☒ **Superior** or ☐ **State Court of** _Gwinnett Superior Court_ **County**

| For Clerk Use Only | |
|---|---|
| **Date Filed** _____ | **Case Number** _____ |
| **MM-DD-YYYY** | 24-A-00569-5 |

**Plaintiff(s)**
Angus, Constantine

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Defendant(s)**
CWS Investments, Inc.

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Plaintiff's Attorney** _William R. Carlisle_    **State Bar Number** _110382_    **Self-Represented** ☐

### Check one case type and one sub-type in the same box (if a sub-type applies):

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☒ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____    _____
**Case Number**                          **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

E-FILED IN OFFICE - KC
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

24-A-00569-5

1/19/2024 4:33 PM
TIANA P. GARNER, CLERK

# IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **CONSTANTINE ANGUS,** | ) | |
|     **PLAINTIFFS,** | ) | |
| | ) | |
|    **-versus-** | ) | **CIVIL ACTION NO.** 24-A-00569-5 |
| | ) | |
| **CWS INVESTMENTS, INC.,** | ) | |
|     **DEFENDANT.** | ) | |

## <u>PLAINTIFF'S VERIFIED COMPLAINT</u>

**COMES NOW** the plaintiff, **CONSTANTINE ANGUS**, who sets forth his Complaint by stating as follows:

### I.
### THE PARTIES

**1.**

The plaintiff is the owner of improved real property located at **2128 E. Main Street, Snellville, GA 30078.**

**2.**

The defendant is a foreign corporation doing business in this state and may be personally served with process and summons by delivering same to **Registered Agents, Inc.**, at **8735 Dunwoody Place, Suite R, Atlanta, GA 30350**.

### II.
### JURISDICTION AND VENUE

**3.**

The defendant is a corporate entity engaged in the business of enforcing contractual claims, rights and choses in action purchased from creditors, lenders, and other intermediary assignees.

**4.**

The defendant is subject to the personal jurisdiction of this Court pursuant to OCGA § 9-10-91.

5.

Venue is proper in this Court pursuant to Article VI, Section II, Paragraph II & III of the Constitution of the State of Georgia.

## III.
## FACTUAL ALLEGATIONS

### A.
### Notice of Foreclosure Sale & Acceleration of Loan

6.

On or about 01/05/2024, the defendant in this action sent the plaintiff a "Notice of Foreclosure Sale and Acceleration of Loan" ("*the foreclosure notice*") by certified mail.[1]

7.

The foreclosure notice states that the plaintiff's real property at 2128 E. Main Street, Snellville, GA 30078 will be sold at a foreclosure sale in Gwinnett County scheduled for 02/05/2024.

8.

The foreclosure notice was drafted and sent to the plaintiff by the defendant's attorneys, who state that they represent "*CWS Investments, Inc., which is the holder of the Promissory Note and Security Deed executed with regard to the above referenced property*."

9.

The foreclosure notice states that the defendant's ownership of the Promissory Note and Security Deed are shown by an assignment recorded at Gwinnett County Deed Book 60770, Page 391 on 08/23/2023.

10.

The foreclosure notice states that the plaintiff is indebted to CWS Investments, Inc. in the amount of $121,685.57, plus attorney's fees of 15% under the terms of the promissory note.

---

[1] See foreclosure notice attached as Exhibit 1.

11.

According to the foreclosure notice, CWS Investments, Inc. was authorized to initiate the foreclosure proceedings as the "*the total amount of the debt has been and hereby is accelerated and declared due and payable in full*."

**B.**

**Promissory Note & Security Deed at Gwinnett Deed Book 47597, Page 348**

12.

The plaintiff in this action obtained a loan from Home America Mortgage, Inc. on 02/07/2007, in the principal amount of $46,950.00.

13.

The plaintiff's loan from Home America Mortgage, Inc. was secured by a second position security deed against his real property and improvements located 2128 E. Main Street Snellville, GA 30078 ("the property").

**C.**

**Recorded Filings in Chain of Title**

14.

As shown by the foreclosure notice, the defendant's claim of rights, title and interest in the security deed and promissory note referenced at Gwinnett Deed Book 47597, Page 348 is based on an assignment from Windstream to CWS Investments, Inc. that is recorded at Gwinnett Deed Book 60770, Page 391.[2]

15.

On 02/22/2007, the second position security interest held by Home America Mortgage, Inc., as evidenced by plaintiff's execution of a promissory note and security deed on 02/07/2007, was recorded at Gwinnett Deed Book 47597, Page 348.[3]

16.

On 07/12/2023, an "Assignment of Security Deed" was recorded at Gwinnett Deed Book 60692, Page 533, assigning any rights held by Taylor, Bean & Whitaker Mortgage Corp. ("TBW") in the security deed at Gwinnett Deed Book 47597, Page 348 to Windstream Capital, LLC ("Windstream").[4]

---

[2] See Windstream assignment at Exhibit 8.
[3] See 02/22/2007 security deed at Exhibit 2.
[4] See 07/12/2023 TBW assignment at Exhibit 3.

17.

There is no recorded assignment or other document appearing in the recorded chain of title that conveys, transfers, or assigns right, title and interest in the promissory note or security deed referenced at Gwinnett Deed Book 47597, Page 338 to TBW.

18.

On 08/01/2023, an "Assignment of Security Deed" was recorded at Gwinnett Deed Book 60729, Page 159 assigning any rights held by MERS, as nominee for Home America Mortgage, Inc. in the *security deed* at Gwinnett Deed Book 47597, Page 338 to Windstream Capital, LLC.[5]

19.

There is no recorded assignment or other document evidencing the conveyance, transfer, or assignment of the *promissory note* referenced at Gwinnett Deed Book 47597, Page 338 from MERS, TBW, or Windstream to anyone.

20.

On 08/23/2023, an "Assignment of Security Deed" was signed and recorded by Windstream Capital, LLC that transferred "*all its rights, title and interest*" in the security deed at Gwinnett Deed Book 47597, Page 338 to CWS Investments, Inc. ("the Windstream Assignment"), to the extent that Windstream Capital, LLC held any interest in the security deed.

21.

The recorded filings in Gwinnett County fail to disclose any conveyance or assignment of rights in the security deed or promissory note at Gwinnett Deed Book 47597, Page 338 to TBW.

22.

As shown by the record filings in Gwinnett, there is no assignment or conveyance of the promissory note referenced at Gwinnett Deed Book 47597, Page 338.

---

[5] See MERS assignment at Exhibit 4.

### D.
### Defendant's Initial Collection Letter

23.

On 10/02/2023, the plaintiff received a collection letter from attorneys representing CWS Investments, Inc.[6]

24.

The letter identifies CWS Investments, Inc. as the plaintiff's "creditor" and alleges the defendant's rights under the terms of the promissory note entered in favor of Home America Mortgage, Inc. on 02/07/2007 at Gwinnett Deed Book 47597, Page 348.

25.

In a letter dated 11/14/2023, the plaintiff responded to the defendant's attorneys, challenging their assertions and demanding proof that the defendant owned the security deed and note and was authorized to "service" the loan and to charge and collect accruing interest on the note.

26.

In a letter dated 12/04/2023, the defendant responded to the plaintiff and produced account statements and communications from two (2) entities identifying themselves as "loan servicers" for one or more undisclosed principals.[7]

27.

From a review of the documents produced by the defendant, the only information relating to ownership of the promissory note and/or security deed is found in a letter dated 10/08/2010, titled as a "Notice of Transfer of Ownership of Mortgage Loan."[8]

### E.
### 10/08/2010 "Notice of Transfer of Ownership of Mortgage Loan"

28.

The 10/08/2010 letter titled as a "Notice of Transfer of Ownership of Mortgage Loan" pertains to the 02/07/2007 loan referenced at Gwinnett Deed Book 47597, Page 348.

---

[6] See 10/02/2023 collection letter at Exhibit 5.
[7] See 12/04/2023 letter at Exhibit 6.
[8] See 10/08/2010 letter at Exhibit 7.

29.

The 10/08/2010 letter states that the plaintiff's "mortgage loan" was transferred to Taylor, Bean & Whitaker Mortgage Corp. ("TBW") under the terms of a settlement agreement with the FDIC, as receiver for Colonial Bank, that was approved by a 09/24/2010 order from the U.S. Bankruptcy Court for the Middle District of Florida, in case no.: 03:09-bk-07047-JAF.

30.

An inspection of the docket for the cited bankruptcy case shows that TBW and the FDIC were parties to the bankruptcy action, but fails to show the existence of any motion to approve settlement agreement or the entry of an order approving a settlement agreement between the parties on 09/24/2010.

31.

There are no recorded assignments or other filings showing a transfer of the 02/07/2007 promissory note and/or security deed at Gwinnett Deed Book 47577, Page 348, occurring on 09/24/2010.

32.

There are no recorded assignments or other filings showing a transfer of the 02/07/2007 promissory note and/or security deed at Gwinnett Deed Book 47597, Page 348, to or from the FDIC, as receiver for Colonial Bank.

**F.**

**Defendant's Claim of Rights in Promissory Note is Unsubstantiated**

33.

As shown by the foreclosure notice, the defendant's claim of rights, title and interest in the security deed and promissory note referenced at Gwinnett Deed Book 47597, Page 348 is based on an assignment from Windstream to CWS Investments, Inc. that is recorded at Gwinnett Deed Book 60770, Page 391.

34.

The recorded assignment at Gwinnett Deed Book 60770, Page 391 is titled "Assignment of Security Deed" and does not reference a conveyance or assignment of rights in the promissory note.

## G.
## Defendant's Rights in Security Deed are Uncertain

### 35.

The right to charge and accrue interest on the note, to contract for "loan servicing," to declare the plaintiff to be in default under the note, and to accelerate the balance on the note, can only be performed by the owner or holder of the promissory note.

### 36.

The right to initiate non-judicial foreclosure proceedings can only be exercised by the party who owns or holds the security interest granted by the security deed recorded at Gwinnett Deed Book 47597, Page 348.

### 37.

As stated in the foreclosure notice, the defendant's claims derive from an assignment between Windstream and CWS Investment, Inc. at Gwinnett Deed Book 60770, Page 391 on 08/23/2023.

### 38.

The recorded chain of title to the property shows two (2) separate assignments of the same security deed at Gwinnett Deed Book 47597, Page 348 to Windstream.

### 39.

The first assignment was signed on 09/24/2020, recorded on 07/12/2023 at Gwinnett Deed Book 60692, Page 533, and purports to convey rights, title and interest in the security deed from TBW to Windstream.

### 40.

The chain of title for the property is devoid of any filings establishing or showing TBW's ownership of rights, title and interest in either the promissory note or the security deed granted to Home America Mortgage, Inc. on 02/22/2007.

### 41.

The second assignment was recorded on 08/01/2023 at Gwinnett Deed Book 60729, Page 159 and purports to convey rights, title and interest in the security deed from MERS, as nominee for Home America Mortgage, Inc. to Windstream.

42.

Additional uncertainty regarding the defendant's rights is created by the 10/08/2010 notice letter stating that ownership of the plaintiff's "mortgage loan" was transferred to TBW on 09/24/2010 by the FDIC, as Receiver for Colonial Bank.

43.

There are no documents appearing in the recorded chain of title that show TBW's acquisition of rights and ownership in the promissory note and security deed.

44.

There are no documents appearing in the chain of title and none were provided in response to the plaintiff's demand that show an assignment or conveyance of the promissory note and/or security deed to or from the FDIC or Colonial Bank, as referenced in the 10/08/2010 notice letter.

45.

The chain of title to the plaintiff's property fails to support the defendant's claim in the 01/06/2024 foreclosure notice that it is the owner and holder of all rights, title and interest in the promissory note and security deed referenced at Gwinnett Deed Book 47597, Page 348.

46.

The defendant's foreclosure notice falsely states that the defendant is the owner of the promissory note pursuant to the assignment of security deed recorded at Gwinnett Deed Book 60770, Page 391.

**IV.**
**Plaintiff's Claims**

**A.**
**Fraud**

47.

The allegations at paragraphs 1-46 are re-alleged as if stated herein verbatim.

48.

The defendant in this action has made false, misleading, and deceptive statements to the plaintiff concerning ownership of the promissory note and security deed that were executed in favor of Home America Mortgage, Inc. on

02/07/2007, and the amount and legal status of the indebtedness allegedly owed under those documents.

49.

The defendant's representations to the plaintiff were made with the intention to induce the plaintiff's reliance and acceptance, with knowledge that the representations were untrue and that the plaintiff's reliance on the representations were likely to cause financial injury and loss to the plaintiff.

50.

Due to the plaintiff's lack of sophistication, training and knowledge in legal matters pertaining to the establishment, recordation, and prioritization of ownership in real property and other legal matters addressed in the defendant's communications, the plaintiff justifiably relied on the defendant's misrepresentations.

51.

The plaintiff's reliance on the defendant's misrepresentations was to his detriment and has resulted in damages and injury that are compensable at law.

52.

The defendant knowingly and intentionally misrepresented its legal status by falsely stating that it acquired rights and ownership in the promissory note granted to Home America Mortgage, Inc. on 02/07/2007 under the assignment of security deed recorded at Gwinnett Deed Book 60770, Page 391.

53.

The defendant falsely represented that it is the owner and/or holder of the promissory note pursuant to the Assignment of Security Deed recorded at Gwinnett Deed Book 60770, Page 391 in written communications to the plaintiff on 10/02/2023 (collection letter), 12/04/2023 (response to demand for verification of claims) and 01/06/2024 (foreclosure notice).

54.

The defendant falsely stated that it is authorized to declare the plaintiff to be in default under the promissory note and to accelerate the note balance pursuant to rights under the Assignment of Security Deed recorded at Gwinnett Deed Book 60770, Page 391 in the communications sent to plaintiff on 10/02/2023 (collection letter), 12/04/2023 (response to demand for verification of claims) and 01/06/2024 (foreclosure notice).

55.

The defendant falsely represented the amount of the alleged indebtedness on the promissory note in written communications sent to the plaintiff on 10/02/2023 (collection letter), 12/04/2023 (response to demand for verification of claims) and 01/06/2024 (foreclosure notice).

56.

The defendant falsely represented its legal status as the owner of the promissory note and the calculation and amount of the alleged indebtedness on the promissory note in communications from its agent, Madison Management Services, LLC, who sent written demands for payment to the plaintiff and deceptively represented itself as a "loan servicer" at the defendant's request.

57.

In reliance on the defendant's knowing and intentionally false statements, the plaintiff incurred actual damages and pecuniary loss and injury by making payments to the defendant that were not owed and were inaccurately applied and credited to any actual outstanding balance on the note.

58.

The defendant's false statements in the communications sent to plaintiff on 10/02/2023 (collection letter), 12/04/2023 (response to demand for verification of claims) and 01/06/2024 (foreclosure notice) have proximately caused physical, mental, and emotional distress to the plaintiff, who has experienced fear, anxiety, sleeplessness, worry, and other physical and mental symptoms arising from the potential loss of his property and its value, damage to his credit, and the potential financial impact of the impending foreclosure.

**B.**
**FDCPA Claim**

59.

The allegations at paragraphs 1-58 are re-alleged as if stated herein verbatim.

60.

The defendant in this action is a "debt collector" as defined at 15 USC § 1692a(6) and 15 USC § 1692f(6).

61.

The plaintiff is a "consumer" within the meaning of 15 USC § 1692a(3).

62.

The debt alleged by the defendant is within the ambit and coverage of the FDCPA.

63.

The defendant's 10/02/2023 collection letter asserts and acknowledges that the indebtedness on the note is subject to the FDCPA, notifies the plaintiff of his validation rights under 15 USC § 1692g, and includes the "mini-Miranda" warning required under the FDCPA, at 15 USC § 1692e(11), informing the plaintiff that the "*communication is from a debt collector attempting to collect a debt.*"

64.

The defendant's 01/06/2024 foreclosure notice to the plaintiff also embodies an attempt to collect debt on the promissory note and includes the "mini-Miranda" warning required under the FDCPA at 15 USC § 1692e(11), stating that the "*communication is from a debt collector attempting to collect a debt.*"

65.

The false claims of ownership of the note and the inflated statement of the debt balance in defendant's 10/02/2023 collection letter and 01/06/2024 foreclosure notice violate 15 USC § 1692e(2)(A) and 15 USC § 1692e(10) by falsely communicating the character, legal status, and amount of the alleged debt.

66.

The defendant's 01/06/2024 foreclosure notice violates 15 USC § 1692f(6) by taking and/or threatening to take nonjudicial action to effect foreclosure and/or dispossession of property where there is no present right to possession of the property claimed as collateral through a security interest.

## C.

## Claim for Wrongful Attempt to Foreclose

67.

The allegations at paragraphs 1-66 are re-alleged as if stated herein verbatim.

68.

By initiating foreclosure proceedings against the plaintiff's property at 2128 E. Main Street, Snellville, GA 30078, the defendant knowingly and intentionally published derogatory and untrue information concerning the debtor's financial condition that directly resulted in damage to the plaintiff.

69.

The defendant's foreclosure notice contains the false statement that the defendant is the owner of the promissory note entered by the plaintiff on 02/07/2007 in favor of Home America Mortgage, Inc. in the original principal amount of $46,950.00.

70.

The defendant's foreclosure notice contains the derogatory and false statements that the plaintiff owes the sum of $121,686.57 to the defendant and that the defendant is authorized to and has declared the alleged indebtedness under the note to be in default and accelerated.

71.

The plaintiff has incurred actual and special damages and pecuniary loss as the direct result of the defendant's wrongful initiation of the foreclosure proceedings and its publication of false and derogatory information concerning the plaintiff's financial condition by forcing the plaintiff to expend time, effort and money to disprove and correct the false statements and to rehabilitate his title and credit reputation.

## E.
## Claim for Punitive Damages

72.

The plaintiffs herein re-allege the factual allegations at paragraphs 1-71 as if same were stated herein verbatim.

73.

Pursuant to OCGA § 51-12-5.1, the defendant's actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

74.

The plaintiffs seek an award of punitive damages in an amount sufficient to punish, penalize, or deter the defendant from committing similar conduct.

**F.**
**Claim for Attorney's Fees & Costs of Litigation**

75.

The plaintiffs herein re-allege the factual allegations at paragraphs 1-74 as if same were stated herein verbatim.

76.

The defendant's conduct, as set out above and herein, is tortious, stubbornly litigious, in bad faith, has caused unnecessary trouble and expense, and lacks substantial justification, authorizing an award of attorney's fees under OCGA § 13-6-11, OCGA § 51-12-7 and OCGA § 9-15-14(b).

**G.**
**Claim for Equitable & Injunctive Relief**

77.

The plaintiffs herein re-allege the factual allegations at paragraphs 1-76 as if same were stated herein verbatim.

78.

The foreclosure proceedings and sale currently scheduled for 02/05/2024 were initiated by the defendant based on the demonstrably false statement that the defendant acquired ownership of the promissory note executed by the plaintiff on 02/07/2007 through an "Assignment of Security Deed" recorded at Gwinnett Deed Book 60770, Page 391.

13

79.

To avoid foreclosure, the 01/05/2024 notice informs the plaintiff that he must pay $121,686.57, which includes the defendant's calculation of unpaid principal and accrued interest charges on the note, plus attorney's fees.

80.

According to the foreclosure notice, the defendant's right to initiate the foreclosure proceedings is based on its prior acceleration of the note and declaration of default for non-payment.

81.

The defendant relies on the "Assignment of Security Deed" recorded at Gwinnett Deed Book 60770, Page 391 to establish its rights in the promissory note and security deed.

82.

The "Assignment of Security Deed" at Gwinnett Deed Book 60770, Page 391 does not convey any rights under the promissory note.

83.

The "Assignment of Security Deed" at Gwinnett Deed Book 60770, Page 391 describes an assignment of the security deed from Windstream Capital, LLC to CWS Investments, Inc.

84.

The legal effect of this assignment is made questionable and uncertain by other documents recorded in the chain of title.

85.

In accordance with the statements in the defendant's foreclosure notice, the extent and validity of the rights, title and interest held by CWS Investments, Inc. can be no greater than the rights, title and interest conveyed to and by Windstream Capital, LLC.

86.

Prior to the assignment from Windstream Capital, LLC to CWS Investments, Inc. on 08/23/2023, the 02/07/2007 security deed granted by the plaintiff was referenced in assignments by two (2) separate entities occurring on two (2) separate dates.

87.

On 07/12/2023, an assignment of the security deed *from* TBW Mortgage Corp. to Windstream Capital, LLC was recorded at Gwinnett Deed Book 60692, Page 533, but there is no prior assignment of the security deed *to* TBW Mortgage Corp. in the chain of title.

88.

On 08/01/2023, the same security deed is referenced in an assignment from MERS, as nominee for Home America Mortgage, Inc., to Windstream Capital, LLC, which is recorded at Gwinnett Deed Book 60729, Page 159.

89.

Neither of the recorded assignments to Windstream Capital reference the promissory note executed on 02/07/2007 in connection with the security deed.

90.

Neither of the recorded assignments to Windstream are consistent with the 10/08/2010 notice provided to the plaintiff by the defendant's attorneys, which states that the 02/07/2007 security deed was transferred to TBW Mortgage Corp. by the FDIC, as Receiver for Colonial Bank, on 09/24/2010.

91.

In order for the defendant to lawfully demand payment, declare a default on the note, initiate foreclosure proceedings on the basis of default, and demand approximately fifteen (15) years' worth of accrued interest on the promissory note, the defendant must be the owner or holder of rights in the promissory note that were received from predecessors in title who complied with all pre-requisites to the ongoing accrual of interest, and who did not waive or relinquish the right to charge interest on any unpaid principal balance on the note.

92.

The 08/23/2023 assignment relied on by the defendant does not convey rights in the promissory note and the chain of title contains gaps that render the source and extent of the plaintiff's rights in the security deed uncertain.

93.

The defendant's right to charge interest on the note, the amount of interest that lawfully accrued on the note balance, the proper application of all prior payments to principal and interest, and the amount of any remaining principal balance after the proper application of payments, are material issues that are

genuinely in dispute and cannot be resolved by consulting the chain of title and all other known documents affecting title and ownership of the plaintiff's property.

94.

As shown from the chain of title, the defendant does not own the 02/07/2007 promissory note and has no lawful right to declare the plaintiff in default under the note, no right to accelerate the payment obligations under the note, and no right to initiate foreclosure proceedings based on its declaration of default and acceleration of the note balance.

95.

Even if Windstream, as assignor, conveyed enforceable rights in the security deed to CWS Investments, Inc., the defendant's authority to demand payment of accrued interest, which precedes the assignment and comprises most of the alleged indebtedness on the property, cannot be verified by reference to the Windstream assignment, as there are two (2) assignments to Windstream from two (2) unrelated assignors, being MERS, as nominee for Home America Mortgage, Inc. and TBW Mortgage Corp., and a gap in the chain of title that span more than fifteen (15) years.

96.

Home America Mortgage, Inc. filed a Chapter 11 bankruptcy in 2009 and stopped charging interest on the promissory note that same year.

97.

As the original creditor under the promissory note, Home America Mortgage, Inc.'s decision to stop charging interest effected a waiver of rights that is binding on all subsequent assignees of the note.

98.

TBW Mortgage Corp. could not lawfully charge interest on the note or assign the note without first owning or holding the note.

99.

There is no recorded document in the chain of title showing TBW's receipt of any rights, title or interest in the promissory note or security deed.

100.

Based on the facts above, which appear from the recorded chain of title and exhibits attached with this Complaint, it would be inequitable and subject the plaintiff to undue risk of harm to allow the scheduled foreclosure sale to take place, subject to the defendant's payment of the note balance, where the defendant's rights in the note and the property are not shown by the chain of title, and where the remaining balance on the note cannot be calculated with any degree of certainty.

**WHEREFORE**, the plaintiffs seek the following relief:

a.) A dollar amount equal to plaintiffs' pecuniary, physical and emotional injuries as actual damages;

b.) A dollar amount equal to the plaintiffs' loss of income and productivity, and all other costs and expenses incurred as the proximate result of defendant's unlawful actions;

c.) A dollar amount to be determined by the enlightened conscience of an impartial jury as general tort damages;

d.) An award equal to the plaintiffs' attorney fees and litigation costs under OCGA § 51-12-7 and OCGA § 13-6-11;

e.) An award of punitive damages under OCGA § 51-12-5.1;

f.) All other and further equitable and injunctive relief authorized by law or in equity;

g.) A trial by jury.

Date: 01/19/2023

Respectfully submitted,

*/s/ William R. Carlisle*
William R. Carlisle
Attorney for Appellant
GA Bar No.: 110382

**CARLISLE LAW FIRM**
4607 Cardinal Ridge Way
Flowery Branch, GA 30542
(770) 295-0175
wrclaw@gmail.com

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

CONSTANTINE ANGUS,                )
    PLAINTIFFS,                )
                      )
  -versus-                      )    CIVIL ACTION NO.
                      )
CWS INVESTMENTS, INC.,            )    24-A-00569-5
    DEFENDANT.                 )

### VERIFICATION

Personally appeared, Constantine Angus, who hereby states that the facts set forth in this Complaint are true and correct to the best of his knowledge and belief.

_____
Constantine Angus

So sworn and subscribed before me
this 19 day of January , 2024.

_____
Notary Public:

18

EXHIBIT 1

# FMG LAW   FREEMAN MATHIS & GARY, LLP

### Attorneys at Law

100 Galleria Parkway
Suite 1600
Atlanta, Ga. 30339-5948

Tel: 770.818.0000

www.fmglaw.com

**Brian S. Goldberg**
Partner

Writer's Direct Access
678-996-9140

Brian.Goldberg@fmglaw.com

January 6, 2024

<u>**VIA CERTIFIED MAIL, RETURN RECEIPT
REQUESTED AND FIRST CLASS MAIL**</u>

Constantine Angus
2128 East Main Street
Snellville, GA 30078

**CERTIFIED MAIL ARTICLE #**
7020 1290 0000 1273 1818

## NOTICE OF FORECLOSURE SALE AND ACCELERATION OF LOAN

Re:   **Secured Creditor:**   CWS Investments, Inc.
       **Secured Property:**   2128 Main Street East, Snellville, GA 30078
       **Matter Number:**   18278-108343

Re:   Security Deed recorded at Deed Book 47597, Page 348 of the Georgia Deed Records of the Superior Court in the County of Gwinnett, said deed originally executed by Constantine Angus in favor of Mortgage Electronic Registration Systems, Inc. as Nominee for Home America Mortgage, Inc. to secure a Note in the original principal amount of $46,950.00, last assigned to CWS Investments, Inc.

Date when the property described in the Security Deed will be sold by foreclosure sale:
**February 2024.**

Present Holder of said Note and Security Deed: CWS Investments, Inc.

Dear Constantine Angus:

By letter dated October 2, 2023, you were notified that this firm represents CWS Investments, Inc., which is the holder of the Promissory Note and Deed to Secure Debt executed with regard to the above-referenced Secured Property. That letter also advised you of certain rights. Nothing contained in this letter will prevent you from exercising those rights as set forth therein. By virtue of non-payment of the installments due under the Promissory Note, the Promissory Note and Deed to Secure Debt remain in default.

This letter is to advise you that pursuant to the terms of the aforesaid Promissory Note and Deed to Secure Debt, the total amount of the debt has been and is hereby accelerated and declared due and payable in full. The total amount of the debt that you owe is One Hundred Twenty-One



January 6, 2024
Page 2

Thousand Six Hundred Eighty-Six & 57/100ths dollars, ($121,686.57), which is good through January 21, 2024. Demand is hereby made for payment thereof. Furthermore, the terms of your Note call for the payment of attorney's fees in addition to the debt in the case of collection by or through an attorney. Georgia Law—O.C.G.A. § 13-1-11—requires that you be allowed ten (10) days from your receipt of this letter to pay the entire amount owed without having to pay attorney's fees. After that time, the full amount of attorney's fees permitted by Georgia Law may be added to the debt. My client hereby demands payment of its attorney's fees should you fail to pay the entire amount owed within the timeframe provided hereinabove.

Because of accrued interest at the rate specified in the Promissory Note, as well as late charges, expenses, costs, attorneys' fees and other charges that may vary from day to day, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.

This letter is to further advise you that foreclosure proceedings are being instituted in the manner provided in the Promissory Note and Deed to Secure Debt for the purpose of selling the above-referenced property. Enclosed is a copy of the Notice of Sale which submitted for publication in the appropriate legal newspaper for four (4) weeks immediately preceding the foreclosure sale of the above-referenced secured property. **Please note that the sale is scheduled for the First Tuesday in February 2024 and will be held within the legal hours of sale at the Gwinnett County Courthouse.**

If you obtained the discharge of the debt described in this letter by order of a United States Bankruptcy Court, that discharge may have extinguished any personal liability you may have had for this loan. However, notice provisions may be contained within your note and security instrument that require notice prior to foreclosure, or such notice may be required under applicable law. In such event, notwithstanding anything to the contrary in this letter, any action taken would be solely limited to foreclosure on the above-referenced secured property and is not intended to be and does not constitute an attempt to collect the debt against you personally.

If you are involved in an active bankruptcy case and no relief from the automatic stay has been obtained by CWS Investments, Inc., please immediately send such bankruptcy information or have your bankruptcy counsel do so if you are represented by counsel. Include the date and jurisdiction of your bankruptcy filing, your case number, and the bankruptcy chapter number under which you have filed. You may send such information to Brian.Goldberg@FMGLaw.com or contact us at the number listed above.

If you desire to reinstate your loan and bring the payments current, please contact this office immediately and we will determine from CWS Investments, Inc. whether you will be permitted to reinstate your loan. If reinstatement of your loan is permitted, you will be required to pay all payments, late charges, costs and attorney fees which may be due at the time of reinstatement in order to cure the current default. If you reinstate your loan, payment must be made through our office in the form of certified funds or cashier's check.



January 6, 2024
Page 3

  CWS Investments, Inc. is the entity with authority to negotiate, amend and modify the terms of the Note and Security Deed. CWS Investments, Inc. is located at the following address and may be reached at the below number:

   CWS Investments, Inc.
   5242 Port Royal Road #1785
   Springfield, VA 22151
   866-226-5736

  Please understand that CWS Investments, Inc is not required by law to negotiate, amend, or modify the terms of the mortgage instrument. Please also note that this letter is being sent to you on behalf of the CWS Investments, Inc so as to comply with the applicable Georgia statutory foreclosure law requirements.

      Very truly yours,

      **FREEMAN MATHIS & GARY, LLP**

      Brian S. Goldberg

BSG/

Cc: CWS Investments, Inc

  **THIS COMMUNICATION IS FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT; ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF THE DEBT IS IN ACTIVE BANKRUPTCY OR HAS BEEN DISCHARGED THROUGH BANKRUPTCY, THIS COMMUNICATION IS NOT INTENDED AS AND DOES NOT CONSTITUTE AN ATTEMPT TO COLLECT A DEBT.**



January 6, 2024
Page 4

## NOTICE OF SALE UNDER POWER

By virtue of the power of sale contained in a Deed to Secure Debt from Constantine Angus to Mortgage Electronic Registration Systems, Inc. as Nominee for Home America Mortgage, Inc. filed February 7, 2007 in Deed Book 47597, Page 348, Gwinnett County, Georgia records, conveying the after described property to secure a Note in the original principal amount of $46,950.00; with interest thereon as set forth therein, last transferred to CWS Investments, Inc. by Assignment filed for Record in Deed Book 60770, Page 391, Gwinnett County, Georgia, there will be sold at a public outcry to the highest bidder for cash before the Courthouse door of Gwinnett County, Georgia, between the legal hours of sale on the first Tuesday in February 2024, by CWS Investments, Inc. as Attorney-in-Fact for Constantine Angus for the following property to-wit:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 38 OF THE 5TH DISTRICT OF GWINNETT COUNTY, GEORGIA, BEING KNOWN AS LOT 2, BLOCK Z, UNIT FIVE, ABINGTON PARK SUBDIVISION, ACCORDING TO THE PLAT OF RECORD IN PLAT BOOK V, PAGE 16, GWINNETT COUNTY RECORDS, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHEASTERLY SIDE OF U.S. HIGHWAY NO. 78, 360 FEET SOUTHWESTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHEASTERLY SIDE OF U.S. HIGHWAY NO. 78 (60 FOOT RIGHT OF WAY) WITH THE SOUTHWESTERLY SIDE OF ABINGTON DRIVE (50 FOOT RIGHT OF WAY); SAID POINT OF BEGINNING ALSO BEING AT THE LINE DIVIDING LOTS 2 AND 3, SAID BLOCK AND SUBDIVISION; RUNNING THENCE SOUTHWESTERLY ALONG THE SOUTHEASTERLY SIDE OF U.S. HIGHWAY NO. 78, 120 FEET TO LOT 1, SAID BLOCK AND SUBDIVISION; RUNNING THENCE SOUTHEASTERLY ALONG THE NORTHEASTERLY LINE OF SAID LOT 1, 198.4 FEET TO A POINT; RUNNING THENCE NORTHEASTERLY 120 FEET TO SAID LOT 3; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY LINE OF SAID LOT 3, 198.8 FEET TO THE SOUTHEASTERLY SIDE OF U.S. HIGHWAY NO. 78 AND THE POINT OF BEGINNING.

LESS AND EXCEPT THE DEPARTMENT OF TRANSPORTATION RIGHT OF WAY DEED FROM FRED SIMPSON AND KATHERINE N. SIMPSON TO THE DEPARTMENT OF TRANSPORTATION DATED December 29, 1980, RECORDED ON September 2, 1981 IN DEED BOOK 2243, PAGE 55, GWINNETT COUNTY, GEORGIA RECORDS. SAID RIGHT OF WAY IS MORE PARTICULARLY DESCRIBED ACCORDING TO A PLAT OF THE



January 6, 2024
Page 5

RIGHT OF WAY PREPARED BY THE DEPARTMENT OF TRANSPORTATION, DATED December 29, 1980 AND RECORDED IN PLAT BOOK 16, PAGE 150.

**The above described property is also known as 2128 Main Street East, Snellville, GA 30078;** however please rely only on the above legal description for location of the property. If the property contains multiple lots or parcels, the undersigned reserves the right to sell the property or any portion thereof in separate lots, parcels or as a whole. The indebtedness secured by said Deed to Secure Debt having been declared due and payable because of among other possible events of default, failure to pay indebtedness as and when due pursuant to said Deed to Secure Debt and Note. The debt remaining in default, this sale will be made for the purposes of paying the same and all expenses of sale, including attorney's fees, if applicable. The property will be sold as the property of PETRA REALTY, INC., subject to the following: all prior restrictive covenants, easements, rights-of-way, security deeds or other encumbrances of record; all valid zoning ordinances; matters which would be disclosed by an accurate survey of the property or by any inspection of the property; all outstanding taxes, assessments, unpaid bills, charges and expenses that are a lien against the property whether due and payable or not yet due and payable. This sale will be conducted subject to (1) confirmation that the sale is not prohibited under the U.S. Bankruptcy Code and (2) to final confirmation and audit as to the amount and status of the loan with the holder of the Security Deed. Pursuant to O.C.G.A. Sec. 44-14-162.2, the name, address and telephone number of the individual or entity who shall have the full authority to negotiate, amend or modify all terms of the above described mortgage is as follows:

> CWS Investments, Inc.
> 5242 Port Royal Road #1785
> Springfield, VA 22151
> 866-226-5736



January 6, 2024
Page 6

The foregoing notwithstanding, nothing in O.C.G.A. Sec. 44-14-162.2 shall be construed to require

CWS Investments, Inc. to negotiate, amend or modify the terms of the Deed to Secure Debt

described herein.

CWS Investments, Inc.
As Attorney-in Fact for
Constantine Angus

**FREEMAN MATHIS & GARY, LLP**
Brian S. Goldberg, Esq.
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR ATTEMPTING TO
COLLECT A DEBT; ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE. HOWEVER, IF THE DEBT IS IN ACTIVE BANKRUPTCY OR HAS BEEN
DISCHARGED THROUGH BANKRUPTCY, THIS COMMUNICATION IS NOT
INTENDED AS AND DOES NOT CONSTITUTE AN ATTEMPT TO COLLECT A
DEBT.**

Publication Dates: January 10, 17, 24, 31, 2024.



January 6, 2024
Page 7

## SERVICEMEMBER CIVIL RELIEF ACT
## NOTICE

Persons who are members of the Army of the United States, the United States Navy, the Marine Corps, the Coast Guard, and all officers of the Public Health Service detailed by proper authority for duty either with the Army or the Navy have certain rights and privileges under the Servicemembers Civil Relief Act, 50 U.S.C. Sec. 501, et seq.

If you own the property being foreclosed, and you are currently, or have been within the last twelve months, a "person in the military service," as defined in 50 U.S.C. Sec. 511, the lender may be required to take additional steps before it is allowed to foreclose.

In particular, the provisions contained in 50 U.S.C. Sec. 532 are designed for the benefit of persons in the military service whose ability to comply with the terms of their mortgage obligation is materially affected by reason of their military service.

If you are currently, or have been within the last twelve months, a "person in the military service," or if you believe that you are entitled to relief under the Servicemembers Civil Relief Act, please contact the undersigned or CWS Investments, Inc. immediately.

**FREEMAN MATHIS & GARY, LLP**

cc: CWS Investments, Inc.

47597
00348

BK 4 7 5 9 7 PG 0 3 4 8

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY. GA.

2007 FEB 22  PM 2: 00

TOM LAWLER. CLERK

# EXHIBIT 2

After Recording Return To:
**BYRNE & COUNTS**
**2138 E. MAIN STREET**
**SNELLVILLE**           **, GA**
**30078**

R07-2641

*Isne*

GEORGIA INTANGIBLE TAX PAID
$ 141.00
TOM LAWLER
SUPERIOR COURT GWINNETT
COUNTY, GEORGIA

_____ [Space Above This Line For Recording Data] _____

## SECURITY DEED
## (Secondary Lien)

MIN: 100029500015537933

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)** **"Security Instrument"** means this document, which is dated **February 07, 2007**           , together with all Riders to this document.

**(B)** **"Borrower"** is **Constantine Angus**

Borrower is the grantor under this Security Instrument.

**(C)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D)** **"Lender"** is **Home America Mortgage, Inc.**
Lender is a **Florida Corporation**           organized and existing under the laws of **FL**           . Lender's address is
**101 NE 2nd Street, Ocala, FL  34470-6642**

**(E)** **"Note"** means the promissory note signed by Borrower and dated **February 07, 2007**           . The Note states that Borrower owes Lender **Forty Six Thousand Nine Hundred Fifty and no/100**
Dollars (U.S. **$46,950.00**           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **February 01, 2037**

**(F)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**GEORGIA SECURITY DEED**—Single Family—**Secondary Lien**
THE COMPLIANCE SOURCE, INC. ©
ITEM T8548L1 (0304)—MERS                    *(Page 1 of 11 pages)*

GREATLAND ■
To Order Call: 1-800-530-9393 ☐ Fax: 616-791-1131

*0244701553793*

0027516



BK47597PG0349

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, if allowed under Applicable Law, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider            ☐ Second Home Rider

☐ Balloon Rider               ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider

☐ Home Improvement Rider      ☐ Revocable Trust Rider

☐ Other(s) [specify]

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**GEORGIA SECURITY DEED**—Single Family—Secondary Lien
THE COMPLIANCE SOURCE, INC. ©
ITEM T8548L2 (0304)—MERS                    *(Page 2 of 11 pages)*

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

BK47597PG0350

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

| County | of | Gwinnett | : |
|--------|-----|----------|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

**See Attached Exhibit A.**

which currently has the address of

**2128 East Main Street**
[Street]

| **Snellville** | , Georgia | **30078** | ("Property Address"): |
|----------------|-----------|-----------|------------------------|
| [City] | | [Zip Code] | |

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   **Payment of Principal, Interest and Other Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and if allowable under Applicable Law, any prepayment charges and late charges due under the Note. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
2.   **Application of Payments or Proceeds.** Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14 or in such manner or location as required under Applicable Law. Except as otherwise described in this Section 2, and

GEORGIA SECURITY DEED—Single Family—Secondary Lien
THE COMPLIANCE SOURCE, INC. ©                                                         GREATLAND ■
ITEM T6548L3 (0304)—MERS                    *(Page 3 of 11 pages)*          To Order Call: 1-800-530-9393 □ Fax 616-791-1131

47597
00351

BK47597PG0351

as permitted under Applicable Law, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. To the extent permitted by Applicable Law, voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.** Subject to Applicable Law, Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 8. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 8 and pay such amount and Borrower shall then be obligated under Section 8 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior security agreement if such holder is an institutional lender. If under

GEORGIA SECURITY DEED—Single Family—Secondary Lien
THE COMPLIANCE SOURCE, INC. ©
ITEM T8548L4 (0304)—MERS                    *(Page 4 of 11 pages)*                    GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

47597
00352

BK47597PG0352

Section 21 the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

    4.    **Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument. Borrower shall pay when due, all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

    Borrower shall promptly discharge any lien other than a lien disclosed to Lender in Borrower's application or in any title report Lender obtained which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.

    Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan if allowed under Applicable Law.

    5.    **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

    If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5, shall be added to the unpaid balance of the loan and interest shall accrue at the Note rate, from the time it was added to the unpaid balance until it is paid in full.

    Subject to Applicable Law, all insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

    In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened,

**GEORGIA SECURITY DEED—**Single Family—**Secondary Lien**
THE COMPLIANCE SOURCE, INC. ©
ITEM T6548L5 (0304)—MERS                    *(Page 5 of 11 pages)*

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

BK47597PG0353

the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.    Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**7.    Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**8.    Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which has or may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has or may attain priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument if allowed under Applicable Law. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**9.    Mortgage Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.

**10.    Assignment of Miscellaneous Proceeds; Forfeiture.** The Miscellaneous Proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for

**GEORGIA SECURITY DEED—Single Family—Secondary Lien**
THE COMPLIANCE SOURCE, INC. ©
ITEM T8548L6 (0304)—MERS                                    *(Page 6 of 11 pages)*

GREATLAND ■
To Order Call: 1-800-530-9393 ☐ Fax 616-791-1131

BK47597PG0354

conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, as allowed under Applicable Law. The absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such

**GEORGIA SECURITY DEED**—Single Family—**Secondary Lien**
THE COMPLIANCE SOURCE, INC. ©
ITEM T6548L7 (0304)—**MERS**          *(Page 7 of 11 pages)*

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=49414794&key1=47597&key2=348&county=67&countyname=GWINNETT&userid=66394...          7/27

loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**14.  Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15.  Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16.  Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17.  Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18.  Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, as allowed under Applicable Law; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**GEORGIA SECURITY DEED**—Single Family—**Secondary Lien**

THE COMPLIANCE SOURCE, INC. ©                                                                GREATLAND ■
ITEM T6548L8 (0304)—MERS                              *(Page 8 of 11 pages)*        To Order Call: 1-800-530-9393 □ Fax 616-791-1131

47597
00356

**BK47597PG0356**

**19.  Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, if required under Applicable Law, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this section . The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20.  Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21.  Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by**

GEORGIA SECURITY DEED—Single Family—Secondary Lien
THE COMPLIANCE SOURCE, INC. ©                                                                                          GREATLAND ■
ITEM T6548L9 (0304)—MERS              *(Page 9 of 11 pages)*              To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

47597
00357

BK47597PG0357

Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law. If the Property is sold pursuant to this Section 21, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

23. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

24. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

25. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

### REQUEST FOR NOTICE OF DEFAULT
### ———— AND FORECLOSURE UNDER SUPERIOR ————
### SECURITY DEEDS, MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any security deed, mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give notice to Lender, at Lender's address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

**GEORGIA SECURITY DEED**—Single Family—Secondary Lien
THE COMPLIANCE SOURCE, INC. ©
ITEM T6548L10 (0304)—MERS          *(Page 10 of 11 pages)*

GREATLAND ■
To Order Call: 1-800-530-9393 ☐ Fax 616-791-1131

47597
00358

BK47597PG0358

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in pages 1 through 11 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____          _____ (Seal)
Unofficial Witness                         Constantine Angus              -Borrower

_____

                                          _____ (Seal)
                                                                          -Borrower

Notary Public, _____ County

My commission expires: _____

                                          _____ (Seal)
                                                                          -Borrower

                                          _____ (Seal)
                                                                          -Borrower

                                          _____ (Seal)
                                                                          -Borrower

                                          _____ (Seal)
                                                                          -Borrower

**GEORGIA SECURITY DEED—Single Family—Secondary Lien**
THE COMPLIANCE SOURCE, INC. ©                                    GREATLAND ®
ITEM T8548L11 (0304)—MERS          *(Page 11 of 11 pages)*    To Order Call: 1-800-530-9393 ☐ Fax: 616-791-1131

BK47597PG0359

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **7th** day of **February 2007**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **Home America Mortgage, Inc.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**2128 East Main Street
Snellville, GA 30078**
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases

MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          **Form 3170 1/01**

ITEM T1790L1 (0011)          *(Page 1 of 3 pages)*          GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131


*230101553793*

BK47597PG0360

of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

**MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3170 1/01

ITEM T1790L2 (0011)                    (Page 2 of 3 pages)        GREATLAND ■
                                                   To Order Call: 1-800-530-9393 ☐ Fax: 616-791-1131

BK 4 7 5 9 7 PG 0 3 6 1

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages
1 through 3 of this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
Constantine Angus                        -Borrower                                                  -Borrower

_____ (Seal)          _____ (Seal)
                                         -Borrower                                                  -Borrower

_____ (Seal)          _____ (Seal)
                                         -Borrower                                                  -Borrower

**MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          **Form 3170 1/01**

ITEM T1790L3 (0011)          *(Page 3 of 3 pages)*          GREATLAND ■
                                                            To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

47597
00362

BK47597PG0362

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 38 OF THE 5TH DISTRICT OF GWINNETT COUNTY, GEORGIA, BEING KNOWN AS LOT 2, BLOCK Z, UNIT FIVE, ABINGTON PARK SUBDIVISION, ACCORDING TO THE PLAT OF RECORD IN PLAT BOOK V, PAGE 16, GWINNETT COUNTY RECORDS, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHEASTERLY SIDE OF U.S. HIGHWAY NO. 78, 360 FEET SOUTHWESTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHEASTERLY SIDE OF U.S. HIGHWAY NO. 78 (60 FOOT RIGHT OF WAY) WITH THE SOUTHWESTERLY SIDE OF ABINGTON DRIVE (50 FOOT RIGHT OF WAY); SAID POINT OF BEGINNING ALSO BEING AT THE LINE DIVIDING LOTS 2 AND 3, SAID BLOCK AND SUBDIVISION; RUNNING THENCE SOUTHWESTERLY ALONG THE SOUTHEASTERLY SIDE OF U.S. HIGHWAY NO. 78, 120 FEET TO LOT 1, SAID BLOCK AND SUBDIVISION; RUNNING THENCE SOUTHEASTERLY ALONG THE NORTHEASTERLY LINE OF SAID LOT 1, 198.4 FEET TO A POINT; RUNNING THENCE NORTHEASTERLY 120 FEET TO SAID LOT 3; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY LINE OF SAID LOT 3, 198.8 FEET TO THE SOUTHEASTERLY SIDE OF U.S. HIGHWAY NO. 78 AND THE POINT OF BEGINNING.

LESS AND EXCEPT THE DEPARTMENT OF TRANSPORTATION RIGHT OF WAY DEED FROM FRED SIMPSON AND KATHERINE N. SIMPSON TO THE DEPARTMENT OF TRANSPORTATION DATED December 29, 1980, RECORDED ON September 2, 1981 IN DEED BOOK 2243, PAGE 55, GWINNETT COUNTY, GEORGIA RECORDS. SAID RIGHT OF WAY IS MORE PARTICULARLY DESCRIBED ACCORDING TO A PLAT OF THE RIGHT OF WAY PREPARED BY THE DEPARTMENT OF TRANSPORTATION, DATED December 29, 1980 AND RECORDED IN PLAT BOOK 16, PAGE 150.

BK47597PG0363

### RIGHT OF WAY EXCEPTION

Less and except the Department of Transportation Right of Way Deed from Fred
Simpson and Katherine N. Simpson to The Department of Transportation dated
December 29, 1980, recorded on September 2, 1981 in Deed Book 2243, Page 55,
Gwinnett County, Georgia records.  Said right of way is more particularly described
according to a plat of the right of way prepared by the Department of Transportation,
dated December 29, 1980 and recorded in Plat Book 16, Page 150.

47597
00364

BK47597PG0364

GEORGIA

LOAN #: 1553793

GRANTOR:  **Constantine Angus**

LENDER:  **Home America Mortgage, Inc.**

DATE OF SECURITY DEED:  **February 7, 2007**

### WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE <u>RIGHT TO ACCELERATE</u> THE DEBT AND THE <u>POWER OF ATTORNEY</u> GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) <u>WAIVES</u> ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED-FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered
in the presence of

_____ (SEAL)
Constantine Angus - Grantor

_____ (SEAL)
- Grantor

_____ (SEAL)
- Grantor

_____ (SEAL)
- Grantor

Notary Public

### CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower, I reviewed with and explained to the Borrower the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower of Borrower's rights.  After said review with and explanation to Borrower, Borrower executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review and explanation to the Borrower, it is my opinion that Borrower knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set out above.

_____
Notary Public

_____
Closing Attorney

### FORECLOSURE CLOSING DISCLOSURE

O.C.G.A Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____
Constantine Angus

47597
00365

BK4 7 5 9 7 PG 0 3 6 5

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

2007 FEB 22  PM 2: 00

TOM LAWLER, CLERK

Record and Return to:
**Weissman, Nowack, Curry & Wilco, P.C.**
**1745 North Brown Road, Suite 100**
**Lawrenceville, GA 30043**
**(404)279-4050**
**(404)279-4150**

File Number: SL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

**WARRANTY DEED**

PT-61 # 67-2007-005009
GWINNETT CO. GEORGIA
REAL ESTATE TRANSFER TAX
$        146.20
TOM LAWLER CLERK OF
SUPERIOR COURT

STATE OF GEORGIA
COUNTY OF GWINNETT

THIS INDENTURE, made this 15TH DAY OF FEBRUARY, 2007, between THOMAS E. CAMPBELL of the County of GWINNETT, and the State of GEORGIA as party or parties of the first part, hereinafter called Grantor, and CATHERINE M. CHAVEZ, as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

WITNESSETH that: Grantor, for and in consideration of the sum of TEN DOLLARS ($10.00) AND OTHER GOOD AND VALUABLE CONSIDERATIONS in hand paid at and before the sealing and  delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, alienated, conveyed and confirmed and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee, the following described property, to-wit:

See attached Exhibit "A" attached hereto and made a part hereof by reference hereto

THIS CONVEYANCE is made subject to all zoning ordinances, easements and restrictions of record affecting said described property.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee, IN FEE SIMPLE together with every contingent remainder and right of reversion, and to the heirs and assigns of said Grantee.

AND THE SAID Grantor will warrant and forever defend the right and title to the above-described property unto the said Grantees against the claims of all persons whomsoever.

IN WITNESS WHEREOF, the Grantor has signed and sealed this deed, the date and year above written.

Signed, sealed and delivered
in the presence of:

_____
**Unofficial Witness**

_____
**Notary Public**

_____(SEAL)
**THOMAS E. CAMPBELL**

0027517-9

WNCW-SP 1011040034  Deed (Warranty)-10/28/04

ı 2

47597
00366

BK 4 7 5 9 7 PG 0 3 6 6

## Exhibit "A"

**File Number:  SL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**

All that tract or parcel of land lying and being in Land Lot 39 of the 7th District, Gwinnett County, Georgia, being Lot 32, Block E, of Heritage Station Subdivision, Unit Three, as per Plat recorded in Plat Book 34, Page 97, and revised in Plat Book 41, Page 175, Gwinnett County, Georgia Records, which plat is incorporated herein and made a part hereof by this reference.

Being known as 1071 Memory Lane, according to the present system of numbering property in Gwinnett County, Georgia.

# EXHIBIT 3

**DEED B: 60692 P: 00533**
**07/12/2023 12:10 PM Pgs: 1 Fees: $25.00**

Prepared by:
Taylor, Bean & Whitaker Mortgage Corp
Attn: Jennifer Rice
425 W. New England Ave, Ste 300
Winter Park, FL 32789

**Tiana P Garner, Clerk of Superior Court**
**Gwinnett County, GA**

**ERECORDED**
**eFile Participant IDs: 2962594507,7067927936**

Record & Return To:
Windstream Capital LLC
2100 Ponce De Leon Blvd, Suite 720
Coral Gables, FL 33134

## ASSIGNMENT OF SECURITY DEED

***FOR VALUE RECEIVED***, **Taylor, Bean & Whitaker Mortgage Corp.**, its successors and/or assigns, whose address is 425 W. New England Ave, Ste 300, Winter Park, FL 32789, does hereby assign and transfer to:

**Windstream Capital LLC**, whose address is 2100 Ponce De Leon Blvd, Suite 720, Coral Gables, FL 33134, all its right, title and interest in and to the following described deed of trust executed by:

**CONSTANTINE ANGUS** to **Mortgage Electronic Registration Systems, Inc. as nominee for Home America Mortgage, Inc.,** its successors and/or assigns for **$46,950.00**, dated 2/7/2007, recorded on **2/22/2007** at Book 47597, Page 348 and/or **Document Number N/A,** in the **Gwinnett** County Clerk's Office, State of GA.

Property Address: **2128 E MAIN ST, Snellville, GA 30078**

THIS ASSIGNMENT is made without recourse, representation or warranty of any kind, either express or implied.

Signed, sealed & delivered on this
24th day of February, 2020 in the presence of:

Witness 1: ___Kira Abramous___

Witness 2: ___Rudolf Rice___

**Taylor, Bean & Whitaker Mortgage Corp.**

By: _____

Printed Name: Neil Luria
Title: Chief Restructuring Officer

Notary Witness: Jennifer Rice
My Commission Expires: 05/16/2020

Jennifer Rice
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF992720
Expires 5/16/2020

# EXHIBIT 4

**DEED B: 60729 P: 00159**
08/01/2023 12:34 PM Pgs: 1 Fees: $25.00

Tiana P Garner, Clerk of Superior Court
Gwinnett County, GA

ERECORDED
eFile Participant IDs: 2962594507,7067927936

When Recorded Return to:
Windstream Capital LLC
2100 Ponce De Leon
Suite 720
Coral Gables, FL 33134

### ASSIGNMENT OF SECURITY DEED

Min: 100029500015537933                     MERS Phone: 1-888-679-6377

**Date of Assignment:**   08/01/2023

**Assignor:**          MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., acting solely as
                       nominee for Home America Mortgage, Inc., its successors and assigns, P.O. Box
                       2026, Flint, MI 48501-2026

**Assignee:**          Windstream Capital LLC
                       2100 Ponce De Leon, Suite 720 Coral Gables, FL 33134

**Executed By:**       Constantine Angus

**To:**                MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., acting solely as
                       nominee for Home America Mortgage, In., its successors and assigns, P.O. Box
                       2026, Flint, MI 48501-2026

**Date of Mortgage:**  February 7, 2007

**Recorded:**          on February 22, 2007 , in official records of Gwinnett County, GA, as Book 47597
                       Page 0348

**Loan Amount:**       $46,950.00

**Legal Description:** As Described in Mortgage and Referred to Herein /Exhibit A

**Property Address:**  2128 E Main Street, Snellville, GA 30078

    FOR VALUE RECEIVED, said Assignor, its successor and assigns, hereby assigns and transfers
unto the Assignee, its successor and assigns, all its right, title and interest in and to the mortgage stated
above.

On 08/01/2023

| | |
|---|---|
| Sworn and subscribed before me<br>This 1st day of Aug , 2023.<br><br>Unofficial Witness Ashton Hamerlu<br><br>Notary Witness<br>[Place notary stamp below here] | MORTGAGE ELECTRONIC REGISTRATION<br>SYSTEMS, INC., acting solely as nominee for<br>Home America Mortgage, Inc., its successors and<br>assigns<br><br>By:<br>James Frafangelo<br>Assistant Secretary |

On 08/01/2023   SHANNA ALVAREZ
                MY COMMISSION # HH 332785
                EXPIRES: November 16, 2026   MORTGAGE ELECTRONIC REGISTRATION



100 Galleria Parkway
Suite 1600
Atlanta, GA  30339-5948

Tel: 770.818.0000

www.fmglaw.com

# EXHIBIT 5

Brian Goldberg

D: 678.996.9140
C: 770.354.2100

Brian.Goldberg@fmglaw.com

October 2, 2023

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
**AND FIRST-CLASS MAIL U.S.P.S.**

Constantine Angus
2128 East Main Street
Snellville, GA 30078

**CERTIFIED MAIL ARTICLE**
**9589071052701327316581**

RE:   **Secured Creditor:**    CWS Investments, Inc.
       **Secured Property:**   2128 Main Street East, Snellville, GA 30078
       **Our File Number:**    18278-108343

RE:   Security Deed recorded at Deed Book 47597, Page 348 of the Georgia Deed Records of
       the Superior Court in the County of Gwinnett, said deed originally executed by
       Constantine Angus in favor of Mortgage Electronic Registration Systems, Inc. as Nominee
       for Home America Mortgage, Inc. to secure a Note in the original principal amount of
       $46,950.00, last assigned to CWS Investments, Inc.

Dear Constantine Angus:

By letter dated October 2, 2023, ("Initial Communication Letter") I notified you that CWS
Investments, Inc. had retained this law firm to collect a debt.  In addition, I outlined your rights
under the Fair Debt Collections Practices Act ("FDCPA"), including your right to validate the debt
in question, which you could exercise within 30 days of your receipt of the Initial Communication
Letter.  Nothing in this letter will prevent you from exercising those rights as explained in the
Initial Communication Letter.

As a result of your breach of the above-referenced Note and Security Deed, which Security
Deed is recorded at Deed Book 47597, Page 348, Gwinnett County, Georgia records, with an
original indebtedness of $46,950, this law firm has been employed to take action against you and
the property, if necessary.  The Note and /or Security Deed provides that the lender must give
certain notices to the borrower and that lender shall be entitled to collect all reasonable costs



October 2, 2023
Page 2

incurred in pursuing the remedies provided.  Pursuant to the terms of said Note and Security Deed, this is notice to you of the following:

1.  Said Note and Security Deed were breached as a result of your failure to make payments on the Note and other possible default under the Security Deed.

2.  To cure this breach, you must pay past due payments and late payments and pay to this firm attorney's fees and cost currently in the amount of Seventy-Five Thousand Seven Hundred Forty-Three and 53/100 dollars ($75,743.53).

My client has informed me that you owe a total outstanding balance of One Hundred Nineteen Thousand Four Hundred Forty-Four and 01/100ths dollars ($119,444.01), which is good through October 11, 2023. Because of interest ($13.88 per diem), late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.  For further information, write the undersigned or call the number set forth above.  All funds must be in the form of a cashier's check or certified funds made payable to this firm.

3.  You have **30** days from the date this notice is mailed to you to cure such breach.

4.  Your failure to cure such breach on or before the above required time may result in acceleration of the total sums secured by said Security Deed and foreclosure and sale of your property, as well as other remedies available to lender.

5.  This letter shall also serve as notice to your of the right to re-instate your loan after acceleration as provided for in the Security Deed and the right to bring a court action to assert the non-existence of a default or any other legal defense to acceleration and sale.

The amount of the debt is set forth above and the creditor to whom the debt is owed is CWS Investments, Inc. which is authorized to receive payment on your loan. As indicated in the Initial Communications Letter, unless you dispute the debt within thirty days after receiving this notice, this firm will assume the debt to be valid.  Should you notify us in writing within the thirty-day period that the debt or any portion thereof is disputed, the firm will obtain a verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be



October 2, 2023
Page 3

mailed to you. Upon your written request within such thirty-day period, the firm will provide you with the name and address of the original creditor, if different from the current creditor.

  If you have received a discharge in a Bankruptcy and this debt was not reaffirmed, this notice is not intended to indicate that you are personally liable for this debt or that we are attempting to collect a debt from you. However, notice provisions may be contained within your note and/or security instrument that require notice prior to foreclosure or such notice may be required under applicable law. In this instance the information concerning the associated debt and any action taken is limited solely to the purpose of conducting a foreclosure of the above-referenced property pursuant to state law. If you are currently under bankruptcy protection and no relief has been granted by CWS Investments, Inc., please fax your bankruptcy case information to us at (678) 236-9154 or have your attorney e-mail such information, if you are represented by counsel, including the date and jurisdiction of your bankruptcy filing, your case number, and the bankruptcy chapter number under which you have filed, to Brian.Goldberg@FMGLaw.com or contact us at the number listed above.

  Please contact the undersigned to make arrangements for paying the past due amount and bringing your loan current or if you have any questions regarding the matters discussed in this letter.

BE GOVERNED ACCORDINGLY,

            Very truly yours,
            **FREEMAN MATHIS & GARY LLP**

CC: CWS Investments, Inc.

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT; ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF THE DEBT IS IN ACTIVE BANKRUPTCY OR HAS BEEN DISCHARGED THROUGH BANKRUPTCY, THIS COMMUNICATION IS NOT INTENDED AS AND DOES NOT CONSTITUTE AN ATTEMPT TO COLLECT A DEBT.**



100 Galleria Parkway
Suite 1600
Atlanta, GA  30339-5948

**EXHIBIT 6**

**Brian Goldberg**

D: 678.996.9140
C: 770.354.2100

Tel: 770.818.0000

Brian.Goldberg@fmglaw.com

**www.fmglaw.com**

December 4, 2023

**Via Electronic Mail (wrclaw@gmail.com)**
William R. Carlisle, Esq.
Carlisle Law Firm
4607 Cardinal Ridge Way
Flowery Branch, Georgia 30542

RE:     **Secured Creditor:**     CWS Investments, Inc.
          **Secured Property:**    2128 Main Street East, Snellville, Georgia 30078
          **Our File Number:**     18278-108343

RE:     Security Deed recorded at Deed Book 47597, Page 348 of the Georgia Deed Records of
          the Superior Court of Gwinnett County, said deed originally executed by Constantine
          Angus in favor of Mortgage Electronic Registration Systems, Inc. as Nominee of Home
          America Mortgage, Inc. to secure a Note in the original principal amount of $46,950.00,
          last assigned to CWS Investments, Inc.

Dear Mr. Carlisle,

        This letter is written in response to your November 14, 2023 letter. In said letter, you
present numerous legal assertions, suggesting that CWS Investments, Inc. ("CWS") and Madison
Management Services, LLC ("MMS") have violated federal and state law in relation to their
October 2, 2023 debt collection letter sent to Mr. Constantine Angus. As discussed below, these
assertions are without merit and do not affect the enforceability of CWS's legal rights and
interests as they relate to Mr. Angus's loan agreement.

        In your letter, you take issue with CWS's demand for accrued interest on the above-
referenced Note, claiming that Mr. Angus's account was "closed" and "charged off." While
charged-off debt may be deemed uncollectable and treated as a loss by a creditor for accounting
purposes, "charging off a debt does ***not*** diminish the legal right of the original creditor to collect
the full amount of the debt." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297 (11th Cir.
2016) (emphasis added). Indeed, contrary to your assertion, charged off debt is ***not*** forgiven. *Id.*;
*see also Hislop v. Bank of Am. Nat'l Ass'n*, Case No. 3:23cv21753-MCR-HTC, 2023 WL 7491130, at



December 4, 2023
Page 2 of 3

*1 n.3 (N.D. Fla. Nov. 8, 2023). Furthermore, and especially pertinent to this matter, once a debt is charged off, the original creditor may choose to sell the debt to a third-party purchaser who then enjoys the same prerogatives as the original creditor and may attempt to collect on the debt. *Id.* at 1298. The fact that the debt here was charged off by Home America Mortgage, Inc. ("HAM") is therefore irrelevant to CWS's ability to collect thereupon.

You also call into question whether the loan and/or actions of CWS remain in compliance with the Truth in Lending Act ("TILA") and its accompanying "Regulation Z". As a threshold matter, it should be noted that Regulation Z is likely inapplicable here. As you are probably aware, Regulation Z only applies to "closed-end consumer credit transaction[s] ***secured by a dwelling***." 12 C.F.R. § 1026.41(a)(1) (emphasis added). A "dwelling" is defined as "a residential structure that contains one to four units . . . if it is used ***as a residence***." 12 C.F.R. § 1026.2(a)(19) (emphasis added). However, the property at issue here is not being used as a residence by Mr. Angus, and is instead being used for commercial purposes. The mere fact that the property may be residential in nature does not subject the loan on that property to the provisions of Regulation Z where the property is used for commercial purposes. *See, e.g., Steines v. Westgate Palace, LLC*, Case No. 6:22-cv-629-RBD-DAB, 2022 WL 18031492 (M.D. Fla. Dec. 14, 2022). Therefore, because the credit transaction here is not secured by a dwelling, it is ***not*** subject to Regulation Z or TILA. If Mr. Angus is using the property solely for residential purposes, we demand that you provide strict proof of the same and/or confirm the same by affidavit sworn under penalty of perjury.

Even assuming arguendo that the credit transaction here could be subject to TILA or Regulation Z, that would still not prevent CWS from collecting on the debt. As you correctly note, CWS is seeking fees and interest related to the charged-off loan—which is has the prerogative to do, *see Hinkle*, 827 F.3d at 1298. Regulation Z may require that servicers seeking interest related to charged-off loans provide periodic statements for those charged-off loans. 12 C.F.R. § 1026.41(e)(6)(i)(A). However, CWS has obtained documents showing such periodic statements ***have*** been provided to Mr. Angus since the inception of the loan, and that Mr. Angus was in fact ***paying*** based on those statements for some time even after the alleged time of the charge off. Therefore, CWS may seek the accrued interest on the charged-off debt, even if TILA and Regulation Z were to apply to the credit transaction, which again, we do not believe they do.

Based on the foregoing, your contention that CWS and MMS have somehow violated the federal Fair Debt Collection Practices Act ("FDCPA") and/or Georgia's Fair Business Practices Act ("FBPA") is wholly unfounded. Notwithstanding the fact that this firm is not a "debt collector", *see Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 203 L. Ed. 2d 390 (2019), and even if there has been some minor failure by CWS and MMS to provide periodic statements—which is likely not even required—any such failure was done as a result of a bona fide error and in good faith, and as such does not open the door to any liability. *See* 15 U.S.C. § 1640(c), (f).



December 4, 2023
Page 3 of 3

Despite the baseless nature of your legal assertions, which appear to rise to the level of "lacking substantial justification" (*see* O.C.G.A. § 9-15-14), CWS is nevertheless willing to extend a loan modification offer to Mr. Angus in relation to the Security Deed and Note.[1] Due to Mr. Angus's failure to pay the required amounts under the loan arrangement, CWS can accelerate the loan and enforce the security deed by non-judicial foreclosure as provided in the loan documents. Currently, the reinstatement amount on the loan is approximately $76,691, and the payoff value is approximately $120,214. Based on these amounts, CWS presents the following loan modification offer to Mr. Angus:

**Option #1:** a $25,000.00 down payment, with payments of $1,500/month for 96 months
**Option #2:** a $50,000.00 down payment, with payments of $1,100/month for 96 months
**Option #3:** a "short payoff" of $110,000.00

Please reach out to the undersigned with any questions regarding this offer and/or to confirm Mr. Angus's decision as to an option for the loan modification. Now, given that CWS has responded to the issues you have asserted fully and rejects your client's arguments as unfounded, CWS has the legal right to proceed to enforce its rights and interests. In the interest of good faith negotiations to the dispute, we will provide you a limited time to review the documents provided and to get back to us with your response to the loan modification offer.

Very truly yours,
**FREEMAN MATHIS & GARY, LLP**

Brian S. Goldberg

BSG/
CC:            CWS Investments, Inc.
Enclosures:    Mortgage Statements

---

[1] Contrary to your contentions, the security deed and promissory note assigned to CWS is not merely a mortgage granting a lien, but rather a duly recorded security deed granting ***title***. *See Cherokee Ins. Co. v. Gravitt*, 187 Ga. App. 179, 183 (1988); *Richey v. First Nat'l Bank of Com.*, 180 Ga. 751 (1935) (courts look to the intent of the assignment, not merely the technical language used, in determining whether the assignment passes a lien through a mortgage or title through a security deed).

# EXHIBIT 7

October 8, 2010

CONSTANTIN ANGUS
2128 E MAIN LN
SNELLVILLE, GA 30078

Loan Number:            1000152551
Property Address:       2128E MAIN ST
                        SNELLVILLE, SNELLVILLE 30078

Dear CONSTANTIN ANGUS  :

**Notice of Transfer of Ownership of Mortgage Loan**

The ownership of your loan was in dispute.  Pursuant to a Settlement Agreement approved by the United States Bankruptcy Court for the Middle District of Florida on September 14, 2010, in the case In re: Taylor, Bean & Whitaker Mortgage Corp., Chapter 11 Case No. 3:09-bk-07047-JAF, Taylor, Bean & Whitaker Mortgage Corp. ("TBW") and the FDIC as Receiver for Colonial Bank (the "FDIC") resolved that dispute and agreed that TBW owned your loan subject to a security interest of the FDIC.

The Truth-in-Lending Act requires that borrowers receive a written notice whenever ownership of a mortgage loan secured by their principal residence is transferred to a new owner, whether by sale, assignment or otherwise.  We are providing this Notice because it has been agreed that TBW owns your loan.

There is a difference between the owner and the servicer of your mortgage loan.  The owner is the creditor for your mortgage loan.  The servicer collects the payments made on your mortgage loan, sends you billing statements, and provides the day-to-day administration of our mortgage loan as a contractor on the creditor's behalf.  Importantly, the transfer of your mortgage loan to a new owner will not result in a change of the servicer.  The name, address and telephone number of your servicer has not changed and is set forth below.

**You should continue to send your mortgage loan payments to the current servicer of your loan, RoundPoint Mortgage Servicing Corporation ("RoundPoint").**  If you have any questions regarding your mortgage loan or the servicing of your mortgage loan, you should contact RoundPoint.  RoundPoint is authorized to handle all of your inquiries and requests.

Please note the following information regarding the transfer of your mortgage loan:

1.  The name, address and telephone number of your new creditor:

    **Taylor, Bean & Whitaker Mortgage Corp.**
    **315 NE 14th Street**
    **Ocala, FL 34470**
    **352-512-0317**

2.  The date of the transfer of your mortgage loan: **September 14, 2010**

# EXHIBIT 8

DEED B: 60770 P: 00391
08/23/2023 02:28 PM Pgs: 2 Fees: $25.00

Tiana P Garner, Clerk of Superior Court
Gwinnett County, GA

ERECORDED
eFile Participant IDs: 8066351695,0848497841

Prepared by When Recorded Return to:
Windstream Capital LLC
2100 Ponce De Leon Blvd, Suite 720
Coral Gables, FL 33134

## ASSIGNMENT OF SECURITY DEED

1389359

**Date of Assignment:** August 14, 2023

**Assignor:** Windstream Capital LLC, 2100 Ponce De Leon Blvd, Suite 720, Coral Gables, FL 33134

**Assignee:** CWS Investments, Inc., 5242 Port Royal Road, #1785, Springfield, VA 22151

**Executed By:** Constantine Angus

**To:** MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., acting solely as nominee for Home America Mortgage, Inc., its successors and assigns, 101 NE 2nd Street, Ocala, FL 34470

**Date of Security Deed:** 02/07/2007

**Recorded:** on February 22, 2007, in official records of Gwinnett County, GA, at Book 47597, Page 348

**Loan Amount:** $46,950.00

**Legal Description:** As Described in Mortgage and Referred to Herein / Exhibit A

**Property Address:** 2128 East Main Street, Snellville, GA 30078

　　FOR VALUE RECEIVED, said Assignor, its successor and assigns, hereby assigns and transfers unto the Assignee, its successor and assigns, all its right, title and interest in and to the Security Deed stated above.

On August 14, 2023

Witness:

Name: Antoinette Hernandez

Witness:

Name: Kevin Bandel

Windstream Capital LLC

By:
James Fratangelo
Manager

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

On August 14, 2023, before me, Ashton Hamerlin, a Notary Public, personally appeared James Fratangelo, as Manager for Windstream Capital LLC, personally known to me or who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity on behalf of the corporation.

Ashton Hamerlin
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG931033
Expires 11/23/2023

Notary Public
My Commission expires: 11/23/23

DEED B: 60770 P: 00392  08/23/2023 02:28 PM
23D056164  Page 2 of 2

Exhibit A

**Property Address:** 2128 East Main Street, Snellville, GA 30078

**Legal Description**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 38 OF THE 5TH DISTRICT OF GWINNETT COUNTY, GEORGIA, BEING KNOWN AS LOT 2, BLOCK Z, UNIT FIVE, ABINGTON PARK SUBDIVISION, ACCORDING TO THE PLAT OF RECORD IN PLAT BOOK V, PAGE 16, GWINNETT COUNTY RECORDS, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHEASTERLY SIDE OF U.S. HIGHWAY NO. 78, 360 FEET SOUTHWESTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHEASTERLY SIDE OF U.S. HIGHWAY NO. 78 (60 FOOT RIGHT OF WAY) WITH THE SOUTHWESTERLY SIDE OF ABINGTON DRIVE (50 FOOT RIGHT OF WAY); SAID POINT OF BEGINNING ALSO BEING AT THE LINE DIVIDING LOTS 2 AND 3, SAID BLOCK AND SUBDIVISION; RUNNING THENCE SOUTHWESTERLY ALONG THE SOUTHEASTERLY SIDE OF U.S. HIGHWAY NO. 78, 120 FEET TO LOT 1, SAID BLOCK AND SUBDIVISION; RUNNING THENCE SOUTHEASTERLY ALONG THE NORTHEASTERLY LINE OF SAID LOT 1, 198.4 FEET TO A POINT; RUNNING THENCE NORTHEASTERLY 120 FEET TO SAID LOT 3; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY LINE OF SAID LOT 3, 198.8 FEET TO THE SOUTHEASTERLY SIDE OF U.S. HIGHWAY NO. 78 AND THE POINT OF BEGINNING.

LESS AND EXCEPT THE DEPARTMENT OF TRANSPORTATION RIGHT OF WAY DEED FROM FRED SIMPSON AND KATHERINE N. SIMPSON TO THE DEPARTMENT OF TRANSPORTATION DATED December 29, 1980, RECORDED ON September 2, 1981 IN DEED BOOK 2243, PAGE 55, GWINNETT COUNTY, GEORGIA RECORDS.  SAID RIGHT OF WAY IS MORE PARTICULARLY DESCRIBED ACCORDING TO A PLAT OF THE RIGHT OF WAY PREPARED BY THE DEPARTMENT OF TRANSPORTATION, DATED December 29, 1980 AND RECORDED IN PLAT BOOK 16, PAGE 150.

# IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

Civil Action
Number 24-A-00569-5

Constantine Angus

Plaintiff

VS.

Cws Investments Inc

Defendant

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA
2024 JAN 22  PM 12: 42
TIANA P. GARNER, CLERK

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

William R Carlisle
Carlisle Law Firm
4607 Cardinal Ridge Way
Flowery Branch Ga  30542

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This 22nd day of January, 2024

Tiana P. Garner,
Clerk of Superior Court

By: _Krystel Castaneda_

Deputy Clerk

INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.
SC-1 Rev. 2011

E-FILED IN OFFICE - MX
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**24-A-00569-5**

**1/29/2024 12:38 PM**
TIANA P. GARNER, CLERK

# IN THE SUPERIOR COURT OF GWINNETT COUNTY
# STATE OF GEORGIA

| | | |
|---|---|---|
| **CONSTANTINE ANGUS,** | ) | |
| **PLAINTIFFS,** | ) | |
| | ) | |
| **-versus-** | ) | **CIVIL ACTION NO.** |
| | ) | **24-A-00569-5** |
| **CWS INVESTMENTS, INC.,** | ) | |
| **DEFENDANT.** | ) | |

## PLAINTIFF'S APPLICATION FOR EMERGENCY EX PARTE RESTRAINING ORDER & INTERLOCUTORY INJUNCTION

**COMES NOW** the plaintiff, **CONSTANTINE ANGUS**, pursuant to OCGA § 9-11-65, who sets forth his Application for Temporary Restraining Order as follows:

## I.
## PLAINTIFF'S SHOWING UNDER OCGA § 9-11-65(b)(1)

### A.
### Specific Facts Showing Irreparable Injury, Loss, or Damage

### 1.
### Equitable Relief Authorized to Stop Foreclosure

The Plaintiff's verified Complaint and exhibits are attached with this Application as evidence of the Defendant's unlawful initiation of non-judicial foreclosure proceedings affecting the Plaintiff's real property at 2128 E. Main Street, Snellville, GA 30078. As shown from the documentary exhibits and verified statements of fact in the Plaintiff's Complaint, the Defendant is claiming ownership of a promissory note and second position security deed executed by the plaintiff on 02/07/2007, in exchange for a loan from Home America Mortgage, as the original creditor. The Plaintiff has filed this action to stop the foreclosure, which is currently scheduled to occur on 02/05/2024. The injury and loss that

would result from the defendant's foreclosure is considered irreparable as a matter of law.[1]

## 2.
## Defendant's Unlawful & Tortious Initiation of Foreclosure Proceedings

The defendant served the plaintiff with written notice of its intention to exercise a nonjudicial power of sale found in the security deed executed by the plaintiff on 02/07/2007, in favor of original creditor Home America Mortgage, Inc. on 01/06/2024 (the "foreclosure notice"). The defendant's foreclosure notice contains false statements concerning the defendant's ownership and rights as an alleged assignee of the 02/07/2007 promissory note and security deed. The defendant's allegations of ownership are unsupported by the recorded documents comprising the chain of tile for the plaintiff's property.

## 3.
## The Defendant Did Not Receive an Assignment of the Promissory Note

The defendant's foreclosure notice alleges that the foreclosure proceedings were initiated by the defendant pursuant to its rights as the owner and holder of the 02/07/2007 promissory note and security deed. As authority for the foreclosure, the defendant states that it has declared the plaintiff to be in default under the terms of the promissory note and has accelerated the balance owed on the note, which remains unpaid. To support its alleged ownership of the promissory note, the defendant references an "Assignment of Security Deed" at Gwinnett Deed Book 60770, Page 391, recorded 08/23/2023. As shown by the title and language in assignment, any conveyance of rights and interest is limited to the security deed and does not include the promissory note.

Further, without owning the promissory note, the defendant has no right to declare a default on the note or to accelerate the balance owed. Moreover, without owning or holding the promissory note, the defendant cannot lawfully collect or charge the plaintiff accruing interest on the balance of the note. The original loan received by the plaintiff was $46,500.00. Since the 02/07/2007 loan date, the

---

[1] *See* <u>Focus Entertainment International, Inc., v. Partridge Greene, Inc.</u>, *256 Ga. App. 283, 568 S.E.2d 183 (2002). "Land, under Georgia law, is deemed sufficiently unique that it is entitled to equitable remedies to protect such interest in land." See also* <u>Rife v. Corbett</u>, *264 Ga. 871, 455 S.E.2d 581 (1995) (injunction to protect an easement);* <u>Benton v. Patel</u>, *257 Ga. 669, 672(1), 362 S.E.2d 217 (1987) (injunction to stop foreclosure);* <u>Black v. American Vending Co.</u>, *239 Ga. 632, 634(2), 238 S.E.2d 420 (1977) ("the law regards as sufficiently unique that equity will enforce a contract for [land] sale or lease");* <u>Clark v. Cagle</u>, *141 Ga. 703, 705-706(1), 82 S.E. 21 (1914) (specific performance of contract to sell land).*

promissory note and security deed were "split," as reflected in recorded assignments pertaining solely to the 02/07/2007 security deed. Because the assignment and chain of title relied on by the defendant does establish ownership of the promissory note, the defendant is not authorized to declare a default or accelerate the balance, collect interest on the balance, or initiate foreclosure proceedings on the basis of its unsupported declaration of default.

**4.**
**Inconsistencies & Breaks in the Chain of Title**

As stated in the foreclosure notice, the defendant is relying on an "Assignment of Security Deed" from Windstream Capital, LLC to establish a security interest in the plaintiff's property. As shown from the recorded chain of title, two (2) separate assignments were recorded in favor Windstream Capital, LLC. The first assignment to Windstream is from Taylor, Bean & Whitaker Mortgage Corp. ("TBW"), recorded at Gwinnett Deed Book 47597, Page 348 on 07/12/2023. The second assignment is dated 08/01/2023, from Home America Mortgage, Inc. to Windstream Capital, Inc. at Gwinnett Deed Book 47597, Page 338.

The alleged conveyance of interest in the 07/12/2023 assignment from TBW to Windstream Capital, LLC is unsupported by any recorded instrument establishing any assignable rights or interest held by TBW. After the 02/22/2007 recording of the original security deed by Home America Mortgage, Inc., the next filing in the chain of title is the 07/12/2023 assignment filed by TBW. There is a break in the recorded chain of title from Home America Mortgage, Inc. to TBW.

The conveyance of rights and interest alleged in the 08/01/2023 assignment from Home America Mortgage, Inc. to Windstream Capital, LLC is contradicted by and inconsistent with multiple documents and filings concerning ownership of the 02/07/2007 security deed. In response to a demand from the plaintiff's undersigned attorney for verification of the defendant's ownership interest in the note and/or security deed, the defendant provided multiple documents including a letter notifying the plaintiff of the transfer of a transfer of interest on 10/08/2010. In the absence of any supporting documentation, the letter states that the 02/07/2007 "loan" was transferred from "MERS, as nominee for Colonial Bank" to TBW Mortgage Corp., on 09/24/2010. According to the notice, the transfer was approved by order of the U.S. Bankruptcy Court in the Middle District of Florida. A review of the docket in that case fails to reflect the filing and docketing of any order approving the alleged transfer. There are no assignments or other recorded

instruments showing the conveyance of interest in the security deed from Home America Mortgage, Inc. to Colonial Bank, or from Colonial Bank to TBW.

## 5.
### Equitable Relief Needed to Prevent Irreparable Injury & Loss

As discussed above and shown in the plaintiff's verified complaint, the defendant's foreclosure notice is defective and contains false statements regarding the chain of title and the defendant's ownership interest and rights under the promissory note and security deed. The failure to restrain and enjoin the defendant from selling the property at foreclosure will not only cause the plaintiff to incur the irreparable loss of his property but will injure any purchaser of the property, due to the breaks and inconsistencies in the chain of title.

## II.
### PLAINTIFF'S SHOWING UNDER OCGA § 9-11-65(b)(2)

By his signature, the undersigned attorney hereby certifies that the following facts are true and correct. Since no later than 10/02/2023, all communications between the plaintiff and the defendant have been conducted through their attorneys. The defendant's attorney is Brian Goldberg, of Freeman, Mathis & Gary, LLP. On 01/19/2024, an email was delivered to Goldberg, providing him with a copy of the verified complaint in this action. The email informed Goldberg that equitable relief was being sought on an expedited basis due to the 02/05/2024 foreclosure date, and requested his availability for a hearing on the plaintiff's request for injunctive relief. Further, the email requested Goldberg to "*please let me know your availability through the end of the month, as I will need to schedule a hearing on our request for injunctive relief. If there is no response, this email should be considered as notice of the plaintiff's claims and his intention to seek emergency ex parte relief under OCGA 9-11-65(b)(2).*"

Goldberg replied to the email on 01/19/2024, stating *"Thank you for providing me a copy of this. I will ask my client if they want me to represent them in this litigation, and additionally (if so) then whether I can acknowledge service and when I have available for your injunctive relief issue to be heard."* Since his email, there has been no further response from Goldberg, the defendant, or any other attorney on behalf of the defendant.

**WHEREFORE**, the plaintiff seeks an ex parte temporary restraining order for a period not to exceed thirty (30) days to allow for a hearing on plaintiff's request for a temporary injunction, under OCGA § 9-11-65.

Date: 01/29/2024

Respectfully submitted,

*/s/ William R. Carlisle*
William R. Carlisle
Attorney for Appellant
GA Bar No.: 110382

**CARLISLE LAW FIRM**
4607 Cardinal Ridge Way
Flowery Branch, GA 30542
(770) 295-0175
wrclaw@gmail.com

5

 Gmail

**William Carlisle <wrclaw@clfoffice.com>**

---

## Filing Submitted for Case: 14111254; ; Envelope Number: 14111254
4 messages

---

**no-reply@efilingmail.tylertech.cloud** <no-reply@efilingmail.tylertech.cloud>    Fri, Jan 19, 2024 at 4:34 PM
To: wrclaw@gmail.com



# Filing Submitted

Envelope Number: 14111254
Case Number: 14111254
Case Style:

The filing below has been submitted to the clerk's office for review. Please allow 24 - 48 hours for clerk office processing.

| Filing Details | |
|---|---|
| Court | Gwinnett County |
| Date/Time Submitted | 1/19/2024 4:33 PM EST |
| Filing Type | Complaint/Petition |
| Filing Description | Complaint & Demand for Equitable & Injunctive Relief |
| Type of Filing | EFile |
| Filed By | William Carlisle |
| Filing Attorney | William Carlisle |

| Fee Details |
|---|
| Your account is never charged until your filing is accepted. If you see any pending charges on your account prior to acceptance, this is an authorization hold to ensure the funds are available so your filing can be accepted without delay. |
| If the filing is canceled or rejected these funds will be released and will return to your account according to your financial institution's policies (typically 3-10 business days). |

| This envelope is pending review and fees may change. | |
|---|---|
| Case Fee Information | $236.65 |
| Case Fees | $211.00 |
| Payment Service Fees | $6.65 |
| E-File Fees | $19.00 |
| Complaint/Petition | $0.00 |
| General Civil/Dom Relations Case Filing Form | $0.00 |

**Total:**$236.65 (The envelope still has pending filings and the fees are subject to change)

| Document Details | |
|---|---|
| Lead Document | Complaint-Exhibits-Angus-CWS.pdf |
| Lead Document Page Count | 55 |
| File Copy | Download Document |
| This link is active for 45 days. | |

For technical assistance, contact your service provider

Odyssey File & Serve

(800) 297-5377

Please do not reply to this email. It was automatically generated.

---

**no-reply@efilingmail.tylertech.cloud** <no-reply@efilingmail.tylertech.cloud>      Fri, Jan 19, 2024 at 4:34 PM
To: wrclaw@gmail.com



# Filing Submitted

Envelope Number: 14111254
Case Number: 14111254
Case Style:

The filing below has been submitted to the clerk's office for review. Please allow 24 - 48 hours for clerk office processing.

| Filing Details | |
|---|---|
| **Court** | Gwinnett County |
| **Date/Time Submitted** | 1/19/2024 4:33 PM EST |
| **Filing Type** | General Civil/Dom Relations Case Filing Form |
| **Filing Description** | Gwinnett County Case Information Sheet |
| **Type of Filing** | EFile |
| **Filed By** | William Carlisle |
| **Filing Attorney** | William Carlisle |

[Quoted text hidden]

| Document Details | |
|---|---|
| **Lead Document** | Gwinnett Civil Domestic Filing Form.pdf |
| **Lead Document Page Count** | 1 |
| **File Copy** | Download Document |
| This link is active for 45 days. | |

[Quoted text hidden]

---

**William Carlisle** <wrclaw@clfoffice.com>      Fri, Jan 19, 2024 at 4:46 PM
Reply-To: wrclaw@gmail.com
To: brian.goldberg@fmglaw.com

A copy of the Complaint is attached to the forwarded email above and is again attached separately below. The plaintiff's verified Complaint was filed this afternoon on behalf of Mr. Angus, and includes a request for injunctive relief. If you will be representing CWS in this matter, please let me know if you are agreeable to acknowledging service on its behalf. Further, if your client intends to go forward with the foreclosure sale scheduled for 02/05/2024, please let me know your availability through the end of the month, as I will need to schedule a hearing on our request for injunctive relief. If there is no response, this email should be considered as notice of the plaintiff's claims and his intention to seek emergency ex parte relief under OCGA 9-11-65(b)(2).

[Quoted text hidden]

--
William R. Carlisle

**CARLISLE LAW FIRM**
P.O. Box A
Winder, GA 30680
(770) 295-0175 ph.
(770) 295-0178 fax

---

 **Complaint-Exhibits-Angus-CWS.pdf**
13310K

---

**Brian Goldberg** <Brian.Goldberg@fmglaw.com>                    Fri, Jan 19, 2024 at 4:58 PM
To: "wrclaw@gmail.com" <wrclaw@gmail.com>

Thank you for providing me a copy of this. I will ask my client if they want me to represent them in this litigation, and additionally (if so) then whether I can acknowledge service and when I have available for your injunctive relief issue to be heard.

## Brian Goldberg

Partner
**Freeman Mathis & Gary, LLP**
**100 Galleria Parkway | Suite 1600 | Atlanta, GA 30339-5948**
**D: 678-996-9140 | C: 770-354-2100**
Brian.Goldberg@fmglaw.com | LinkedIn | Bio
www.fmglaw.com | Instagram | Twitter | Facebook



AZ | CA | CO | CT | FL | GA | IL | IN | KY | MA | NJ | NM | NV | NY | OH | PA | RI | TN | TX
Please read this important notice and confidentiality statement

---

**From:** William Carlisle <wrclaw@clfoffice.com>
**Sent:** Friday, January 19, 2024 4:47 PM
**To:** Brian Goldberg <Brian.Goldberg@fmglaw.com>
**Subject:** Fwd: Filing Submitted for Case: 14111254; ; Envelope Number: 14111254

**Caution:** This email originated from outside of the FMG organization. **Do not click links** or **open attachments** unless you recognize the sender and know the content is safe.

[Quoted text hidden]

E-FILED IN OFFICE - MX
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

24-A-00569-5

1/29/2024 12:25 PM

TIANA P. GARNER, CLERK

# IN THE SUPERIOR COURT OF GWINNETT COUNTY

# STATE OF GEORGIA

_____

_____

_____

CIVIL ACTION
NUMBER:_____

PLAINTIFF

VS.

_____

_____

_____

DEFENDANT

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

29th day of January, 2024

**This** _____ **day of** _____ **,   20_____.**

Tiana P. Garner
**Clerk of Superior Court**

**By**_____

**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - MX
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**24-A-00569-5**

**1/30/2024 3:47 PM**
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **CONSTANTINE ANGUS,** | ) | |
| **PLAINTIFFS,** | ) | |
| | ) | |
| -versus- | ) | **CIVIL ACTION NO.** |
| | ) | **24-A-00569-5** |
| **CWS INVESTMENTS, INC.,** | ) | |
| **DEFENDANT.** | ) | |

## <u>AFFIDAVIT OF WILLIAM R. CARLISLE</u>

**COMES NOW** the undersigned affiant and plaintiff's attorney of record, William R. Carlisle, who being duly sworn under oath and otherwise competent to make this affidavit, states and shows as follows:

1.

A second original of the **Summons** and plaintiff's **verified Complaint and exhibits**, and the **Plaintiff's Application for Emergency Ex Parte Restraining Order & Interlocutory Injunction** were served to the defendant's registered agent for service of process, Registered Agents, Inc., at **Registered Agents, Inc.,** at **8735 Dunwoody Place, Suite R, Atlanta, GA 30350** by overnight mail, as alternative service authorized at OCGA § 14-2-504(b). See Exhibit 1.

2.

A second original of the Summons and plaintiff's verified Complaint and exhibits, and the **Plaintiff's Application for Emergency Ex Parte Restraining Order & Interlocutory Injunction** were delivered to the Fulton County Sheriff's office to allow for personal service to the defendant's registered agent, **Registered Agents, Inc.,** at **8735 Dunwoody Place, Suite R, Atlanta, GA 30350,** by overnight mail. See Exhibit 2.

3.

A filed copy of the plaintiff's verified Complaint and exhibits was sent to the defendant's attorney, Brian Goldberg, of Freeman, Mathis & Gary, by email to brian.goldberg@fmglaw.com on 01/19/2024. See Plaintiff's Application for Emergency Ex Parte Restraining Order & Interlocutory Injunction.

4.

A filed copy of the **Plaintiff's Application for Emergency Ex Parte Restraining Order & Interlocutory Injunction** was sent to the defendant's attorney, Brian Goldberg, of Freeman, Mathis & Gary, by email to brian.goldberg@fmglaw.com on 01/29/2024. See Exhibit 3.

5.

This affidavit is filed to certify the plaintiff's efforts to provide notice in compliance with OCGA § 9-11-65(b)(2), and to set forth facts establishing the sufficiency of such efforts.

6.

The claims for relief in the above styled action include the plaintiff's emergency application for in rem injunctive relief to restrain and enjoin the defendant's foreclosure and sale of the plaintiff's real property at the Gwinnett County Sheriff's auction scheduled for 02/05/2024.

7.

This Court has jurisdiction to temporarily restrain and enjoin the sale of the plaintiff's real property for up to thirty (30) days upon receiving plaintiff's application and written certification under OCGA § 9-11-65(b), without perfecting service on the defendant under OCGA § 9-11-4.[1]

8.

The plaintiff cannot ensure the perfection of personal service under OCGA § 9-11-4, prior to the 02/05/2024 foreclosure sale, for the following reasons: 1.) this action is filed in Gwinnett County Superior Court, which does not maintain a list of permanent private process servers; 2.) the defendant's registered agent and office are located in Fulton County, requiring appointment of a private process server or service by the Fulton County Sheriff's office; 3.) the date of the foreclosure sale does not allow sufficient time to obtain an order appointing a private process server; and 4.) the Fulton County Sheriff's Office does not provide expedited or rushed service options.

---

[1] See _Stewart v. McLean_, 314 S.E.2d 439, 252 Ga. 455 (Ga. 1984), "The fact that appellants were not properly served with the complaints in these cases until four days after the trial court issued the temporary restraining orders did not divest the trial court of jurisdiction to enter these orders." See also _Ebon Foundation v. Oatman_, 269 Ga. 340, 498 S.E.2d 728 (Ga. 1998), "there is no requirement of personal service prior to the issuance of an interlocutory injunction. Notice to the adverse party is all that is required."

2

Date: 01/30/2024

William R. Carlisle
Affiant/Attorney

Sworn to and subscribed before me
this 30 day of January_____, 2024.

Notary Public: Cameron Harrison Chambers



 **Gmail**

William Carlisle <wrclaw@clfoffice.com>

---

## Application for Emergency Ex Parte Injunctive Relief
1 message

**William Carlisle** <wrclaw@clfoffice.com>                Mon, Jan 29, 2024 at 6:11 PM
Reply-To: wrclaw@gmail.com
To: brian.goldberg@fmglaw.com

This email is being sent in an effort to provide notice of the plaintiff's request for emergency injunctive relief and allow the defendant an opportunity to be heard in opposition, under OCGA 9-11-65(b)(2). I am attaching a copy of the emergency ex parte TRO application filed today, which is also being delivered to your office and your client's registered agent in accordance with OCGA 14-2-504(b).

Since providing initial notice of the plaintiff's claims for relief on 01/19/2024, I have received no response regarding your client's willingness to acknowledge service or your availability for an emergency hearing on injunctive relief.

Further, there has been no response on whether your client still intends to move forward with the foreclosure sale scheduled for 02/05/2024. In the absence of any statement to the contrary, I can only assume that CWS will be moving forward with the sale next week. It would seem to be in the best interests of both parties to postpone the upcoming foreclosure sale to allow time for a full hearing on these issues.

--
William R. Carlisle

**CARLISLE LAW FIRM**
P.O. Box A
Winder, GA 30680
(770) 295-0175 ph.
(770) 295-0178 fax

---

📄 **Angus-TRO App.pdf**
323K

# Shipment Receipt:  Page #1 of 1

THIS IS NOT A SHIPPING LABEL. PLEASE SAVE FOR YOUR RECORDS.

SHIP DATE:
TUES 30 JAN 2024

EXPECTED DELIVERY DATE:
WED 31 JAN 2024 10:30 AM
SHIP FROM:
CARLISLE LAW FIRM
4807 CARDINAL RIDGE WAY
FLOWERY BRANCH  GA 30542
(770) 295-0175

SHIP TO:
REGISTERED AGENTS, INC.
8735 DUNWOODY PL
STE R
ATLANTA GA 30350-2995
BUSINESS

SHIPPED THROUGH:
THE UPS STORE #3477
FLOWERY BRANCH,GA 30542-3087
(770) 297-8946

SHIPMENT INFORMATION:
UPS NEXT DAY AIR COM
0.78 lb actual wt
1.000 lb billable wt
CARRIER LETTER
= 100.00

TRACKING NUMBER: 1Z5846FA0109663949
SHIPMENT ID: MMKTEN86KPB11
SHIP REF 1: - -
SHIP REF 2: CC

DESCRIPTION OF GOODS:
DOCUMENTS

| SHIPMENT CHARGES: | |
|---|---|
| NEXT DAY AIR COM | 37.07 |
| SERVICE OPTIONS | 0.00 |
| FUEL SURCHARGE | 6.21 |
| CMS PROCESSING FEE | 0.22 |
| **TOTAL** | **$43.50** |

COMPLETE ONLINE TRACKING:  ENTER THIS ADDRESS IN YOUR WEB BROWSER TO TRACK:
HTTP://THEUPSSTORE.COM  (SELECT TRACKING, ENTER SHIPMENT ID #)    SHIPMENT
QUESTIONS? CONTACT SHIPPED THROUGH ABOVE.
     NEED PACKAGE HELP? (LOST/DAMAGED). PROVIDE DETAILS SO WE CAN HELP:
HTTPS://ONLINE.UPSCAPITAL.COM/TCCP

SHIPMENTID: MMKTEN86KPB11

Powered by iShip(r)
01/30/2024 03:09 PM Pacific Time F

The UPS Store«



SEE NOTICE ON REVERSE regarding UPS Terms and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.



# Shipment Receipt: Page #1 of 1

THIS IS NOT A SHIPPING LABEL. PLEASE SAVE FOR YOUR RECORDS.

SHIP DATE:
TUES 30 JAN 2024

EXPECTED DELIVERY DATE:
WED 31 JAN 2024 10:30 AM

SHIP FROM:
CARLISLE LAW FIRM
4607 CARDINAL RIDGE WAY
FLOWERY BRANCH GA 30542
(770) 285-0175

SHIP TO:
FULTON COUNTY SHERIFF
CIVIL-SERVICE OF PROCESS
185 CENTRAL AVE SW
FL 9
ATLANTA GA 30303-6206
BUSINESS

SHIPPED THROUGH:
THE UPS STORE #3477
FLOWERY BRANCH,GA 30542-3087
(770) 297-8946

SHIPMENT INFORMATION:
UPS NEXT DAY AIR COM
0.04 lb actual wt
1.000 lb billable wt
CARRIER LETTER
= 100.00

TRACKING NUMBER: 1Z5846FA0109666419
SHIPMENT ID: MMXTEN86KKSJ8
SHIP REF 1: - -
SHIP REF 2: CC

DESCRIPTION OF GOODS:
DOCUMENTS

SHIPMENT CHARGES:
NEXT DAY AIR COM
SERVICE OPTIONS          37.07
FUEL SURCHARGE            0.00
CMS PROCESSING FEE        6.21
                         0.22

TOTAL                   $43.50

COMPLETE ONLINE TRACKING:  ENTER THIS ADDRESS IN YOUR WEB BROWSER TO TRACK:
HTTP://THEUPSSTORE.COM  (SELECT TRACKING, ENTER SHIPMENT ID #)
QUESTIONS? CONTACT SHIPPED THROUGH ABOVE.                SHIPMENT
NEED PACKAGE HELP? (LOST/DAMAGED). PROVIDE DETAILS SO HE CAN HELP:
HTTPS://ONLINE.UPSCAPITAL.COM/TCCP

SHIPMENTID: MMXTEN86KKSJ8



Powered by iShip(r)
01/30/2024 03:11 PM Pacific Time F



SEE NOTICE ON REVERSE regarding all UPS terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.

The UPS Store®

*3*

E-FILED IN OFFICE - MX
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**24-A-00569-5**

**1/30/2024 3:47 PM**
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **CONSTANTINE ANGUS,** | ) | |
| **PLAINTIFFS,** | ) | |
| | ) | |
| -versus- | ) | **CIVIL ACTION NO.** |
| | ) | **24-A-00569-5** |
| **CWS INVESTMENTS, INC.,** | ) | |
| **DEFENDANT.** | ) | |

## <u>AFFIDAVIT OF WILLIAM R. CARLISLE</u>

**COMES NOW** the undersigned affiant and plaintiff's attorney of record, William R. Carlisle, who being duly sworn under oath and otherwise competent to make this affidavit, states and shows as follows:

1.

A second original of the **Summons** and plaintiff's **verified Complaint and exhibits**, and the **Plaintiff's Application for Emergency Ex Parte Restraining Order & Interlocutory Injunction** were served to the defendant's registered agent for service of process, Registered Agents, Inc., at **Registered Agents, Inc.,** at **8735 Dunwoody Place, Suite R, Atlanta, GA 30350** by overnight mail, as alternative service authorized at OCGA § 14-2-504(b). See Exhibit 1.

2.

A second original of the Summons and plaintiff's verified Complaint and exhibits, and the **Plaintiff's Application for Emergency Ex Parte Restraining Order & Interlocutory Injunction** were delivered to the Fulton County Sheriff's office to allow for personal service to the defendant's registered agent, **Registered Agents, Inc.,** at **8735 Dunwoody Place, Suite R, Atlanta, GA 30350,** by overnight mail. See Exhibit 2.

3.

A filed copy of the plaintiff's verified Complaint and exhibits was sent to the defendant's attorney, Brian Goldberg, of Freeman, Mathis & Gary, by email to brian.goldberg@fmglaw.com on 01/19/2024. See Plaintiff's Application for Emergency Ex Parte Restraining Order & Interlocutory Injunction.

1

4.

A filed copy of the **Plaintiff's Application for Emergency Ex Parte Restraining Order & Interlocutory Injunction** was sent to the defendant's attorney, Brian Goldberg, of Freeman, Mathis & Gary, by email to brian.goldberg@fmglaw.com on 01/29/2024. See Exhibit 3.

5.

This affidavit is filed to certify the plaintiff's efforts to provide notice in compliance with OCGA § 9-11-65(b)(2), and to set forth facts establishing the sufficiency of such efforts.

6.

The claims for relief in the above styled action include the plaintiff's emergency application for in rem injunctive relief to restrain and enjoin the defendant's foreclosure and sale of the plaintiff's real property at the Gwinnett County Sheriff's auction scheduled for 02/05/2024.

7.

This Court has jurisdiction to temporarily restrain and enjoin the sale of the plaintiff's real property for up to thirty (30) days upon receiving plaintiff's application and written certification under OCGA § 9-11-65(b), without perfecting service on the defendant under OCGA § 9-11-4.[1]

8.

The plaintiff cannot ensure the perfection of personal service under OCGA § 9-11-4, prior to the 02/05/2024 foreclosure sale, for the following reasons: 1.) this action is filed in Gwinnett County Superior Court, which does not maintain a list of permanent private process servers; 2.) the defendant's registered agent and office are located in Fulton County, requiring appointment of a private process server or service by the Fulton County Sheriff's office; 3.) the date of the foreclosure sale does not allow sufficient time to obtain an order appointing a private process server; and 4.) the Fulton County Sheriff's Office does not provide expedited or rushed service options.

---

[1] *See Stewart v. McLean*, 314 S.E.2d 439, 252 Ga. 455 (Ga. 1984), "The fact that appellants were not properly served with the complaints in these cases until four days after the trial court issued the temporary restraining orders did not divest the trial court of jurisdiction to enter these orders." See also *Ebon Foundation v. Oatman*, 269 Ga. 340, 498 S.E.2d 728 (Ga. 1998), "there is no requirement of personal service prior to the issuance of an interlocutory injunction. Notice to the adverse party is all that is required."

Date: 01/30/2024

_____
William R. Carlisle
Affiant/Attorney

Sworn to and subscribed before me
this 30 day of January_____, 2024.

_____
Notary Public: Cameron Harrison Chambers

3

 Gmail

William Carlisle <wrclaw@clfoffice.com>

---

## Application for Emergency Ex Parte Injunctive Relief
1 message

**William Carlisle** <wrclaw@clfoffice.com>                                    Mon, Jan 29, 2024 at 6:11 PM
Reply-To: wrclaw@gmail.com
To: brian.goldberg@fmglaw.com

This email is being sent in an effort to provide notice of the plaintiff's request for emergency injunctive relief and allow the defendant an opportunity to be heard in opposition, under OCGA 9-11-65(b)(2). I am attaching a copy of the emergency ex parte TRO application filed today, which is also being delivered to your office and your client's registered agent in accordance with OCGA 14-2-504(b).

Since providing initial notice of the plaintiff's claims for relief on 01/19/2024, I have received no response regarding your client's willingness to acknowledge service or your availability for an emergency hearing on injunctive relief.

Further, there has been no response on whether your client still intends to move forward with the foreclosure sale scheduled for 02/05/2024. In the absence of any statement to the contrary, I can only assume that CWS will be moving forward with the sale next week. It would seem to be in the best interests of both parties to postpone the upcoming foreclosure sale to allow time for a full hearing on these issues.

--
William R. Carlisle

**CARLISLE LAW FIRM**
P.O. Box A
Winder, GA 30680
(770) 295-0175 ph.
(770) 295-0178 fax

---

📄 **Angus-TRO App.pdf**
323K

# Shipment Receipt:  Page #1 of 1

THIS IS NOT A SHIPPING LABEL. PLEASE SAVE FOR YOUR RECORDS.

SHIP DATE:
TUES 30 JAN 2024

EXPECTED DELIVERY DATE:
WED 31 JAN 2024 10:30 AM
SHIP FROM:
CARLISLE LAW FIRM
4807 CARDINAL RIDGE WAY
FLOWERY BRANCH  GA 30542
(770) 295-0175

SHIP TO:
REGISTERED AGENTS, INC.
8735 DUNWOODY PL
STE R
ATLANTA GA 30350-2995
BUSINESS

SHIPPED THROUGH:
THE UPS STORE #3477
FLOWERY BRANCH,GA 30542-3087
(770) 297-8946

SHIPMENT INFORMATION:
UPS NEXT DAY AIR COM
0.78 lb actual wt
1.000 lb billable wt
CARRIER LETTER
= 100.00

TRACKING NUMBER: 1Z5846FA0109663949
SHIPMENT ID: MMKTEN86KPB11
SHIP REF 1: - -
SHIP REF 2: CC

DESCRIPTION OF GOODS:
DOCUMENTS

SHIPMENT CHARGES:
NEXT DAY AIR COM            37.07
SERVICE OPTIONS             0.00
FUEL SURCHARGE              6.21
CMS PROCESSING FEE          0.22

TOTAL                      $43.50

COMPLETE ONLINE TRACKING:  ENTER THIS ADDRESS IN YOUR WEB BROWSER TO TRACK:
HTTP://THEUPSSTORE.COM  (SELECT TRACKING, ENTER SHIPMENT ID #)    SHIPMENT
QUESTIONS? CONTACT SHIPPED THROUGH ABOVE.
    NEED PACKAGE HELP? (LOST/DAMAGED). PROVIDE DETAILS SO WE CAN HELP:
HTTPS://ONLINE.UPSCAPITAL.COM/TCCP

SHIPMENTID: MMKTEN86KPB11

Powered by iShip(r)
01/30/2024 03:09 PM Pacific Time F

The UPS Store«

SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Otherwise contrary to law is prohibited.



# Shipment Receipt:   Page #1 of 1
THIS IS NOT A SHIPPING LABEL. PLEASE SAVE FOR YOUR RECORDS.

SHIP DATE:
TUES 30 JAN 2024

EXPECTED DELIVERY DATE:
WED 31 JAN 2024 10:30 AM
SHIP FROM:
CARLISLE LAW FIRM
4607 CARDINAL RIDGE WAY
FLOWERY BRANCH  GA 30542
(770) 295-0175

SHIP TO:
FULTON COUNTY SHERIFF
CIVIL-SERVICE OF PROCESS
185 CENTRAL AVE SW
FL 9
ATLANTA GA 30303-6206
BUSINESS

SHIPPED THROUGH:
THE UPS STORE #3477
FLOWERY BRANCH,GA 30542-3087
(770) 297-8946

SHIPMENT INFORMATION:
UPS NEXT DAY AIR COM
0.04 lb actual wt
1.000 lb billable wt
CARRIER LETTER
= 100.00

TRACKING NUMBER: 1Z5046FA0100666419
SHIPMENT ID: MHXTEN86KKSJ8
SHIP REF 1: - -
SHIP REF 2: CC

DESCRIPTION OF GOODS:
DOCUMENTS

SHIPMENT CHARGES:
NEXT DAY AIR COM
SERVICE OPTIONS          37.07
FUEL SURCHARGE            0.00
CMS PROCESSING FEE        6.21
                         0.22

TOTAL                   $43.50

COMPLETE ONLINE TRACKING:  ENTER THIS ADDRESS IN YOUR WEB BROWSER TO TRACK:
HTTP://THEUPSSTORE.COM  (SELECT TRACKING, ENTER SHIPMENT ID #)    SHIPMENT
QUESTIONS? CONTACT SHIPPED THROUGH ABOVE
NEED PACKAGE HELP? (LOST/DAMAGED). PROVIDE DETAILS SO HE CAN HELP:
HTTPS://ONLINE.UPSCAPITAL.COM/TCCP

SHIPMENTID: MHXTEN86KKSJ8

Powered by iShip(r)
01/30/2024 03:11 PM  Pacific Time F

SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.

The UPS Store

*3*

E-FILED IN OFFICE - MX
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

24-A-00569-5

1/30/2024 2:34 PM
TIANA P. GARNER, CLERK

### IN THE SUPERIOR COURT OF GWINNETT COUNTY
### STATE OF GEORGIA

| | | |
|---|---|---|
| CONSTANTINE ANGUS, | ) | CIVIL ACTION FILE NO. |
| Plaintiff, | ) | |
| | ) | 24-A-00569-5 |
| vs. | ) | |
| | ) | |
| CWS INVESTMENTS, INC., | ) | |
| Defendant. | ) | |

### ORDER DENYING PLAINTIFF'S APPLICATION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER

This matter is before the Court on Plaintiff's Application for Emergency Ex Parte Temporary

Restraining Order and for Hearing on Plaintiff's Motion for Temporary Injunction, filed on January 29, 2024.

Upon consideration of the pleadings and the Motion, the Motion for ex parte relief is DENIED.  The Plaintiff

may renew his application for a temporary restraining order after service has been perfected on the Defendant.

SO ORDERED, this 30th day of January, 2024.

KAREN E. BEYERS, JUDGE
Superior Court of Gwinnett County

William R. Carlisle
4607 Cardinal Ridge Way
Flowery Branch, GA 30542
Wrclaw@gmail.com

E-FILED IN OFFICE - MX
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

24-A-00569-5

1/31/2024 11:23 AM
TIANA P. GARNER, CLERK

# IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **CONSTANTINE ANGUS,** | ) | |
| **PLAINTIFFS,** | ) | |
| | ) | |
| **-versus-** | ) | **CIVIL ACTION NO.** |
| | ) | **24-A-00569-5** |
| **CWS INVESTMENTS, INC.,** | ) | |
| **DEFENDANT.** | ) | |

## PLAINTIFF'S RENEWED APPLICATION FOR EMERGENCY EX PARTE RESTRAINING ORDER & INTERLOCUTORY INJUNCTION AND MOTION FOR RECONSIDERATION

**COMES NOW** the plaintiff, **CONSTANTINE ANGUS**, pursuant to OCGA § 9-11-65, who sets forth his Renewed Application for Temporary Restraining Order and Motion for Reconsideration as follows:

### I.
### Introduction

The Applicant renews his Application for an Ex Parte Temporary Restraining Order and seeks reconsideration of the 01/30/2024 Order denying the plaintiff's Application. In support of the renewed motion, the plaintiff states that he has complied with the statutory notice requirements at OCGA § 9-11-65(b) and hereby incorporates the plaintiff's verified Complaint, his 01/29/2024 application for emergency ex parte relief, the 01/30/2024 affidavit by William R. Carlisle, and offers additional facts, argument, and authority in support of this renewed application for emergency temporary injunctive relief.

### II.
### Superior Court's Authority to Issue Ex Parte Temporary Restraining Notice

Pursuant to OCGA § 9-11-65(b), this Court has authority and jurisdiction to enter an ex parte order to prevent irreparable injury and loss to the plaintiff, with or without notice to the defendant, on a temporary basis not to exceed thirty (30) days. The Court's grant of an ex parte temporary restraining order is to preserve the status quo between the parties until service can be obtained and the opposing party

can be heard in opposition. Perfection of service on the defendant is not required as shown by authority in the 01/30/2024 affidavit by William R. Carlisle.

## III.
### Sufficient Notice and Opportunity to be Heard has Been Provided to the Defendant Under OCGA § 9-11-65(b)

The plaintiff filed this action on 01/19/2024 and provided notice to the defendant by sending a copy of the plaintiff's verified Complaint and exhibits to the defendant's attorney that same day. The defendant's attorney was informed of the plaintiff's intention to seek injunctive relief to halt the foreclosure and asked for dates on which he would be available for a hearing. After confirming receipt of the pleadings, the defendant's attorney stated he would confer with his client before responding. No subsequent response has been received since that date.

After receiving no response from the defendant or its attorney, the plaintiff filed his emergency ex parte application for a temporary restraining order and hearing date for an interlocutory injunction on 01/29/2024. The plaintiff's application showed proof of his efforts to notify the defendant and provided facts showing the existence of an emergency basis authorizing ex parte relief, based on the scheduling of a foreclosure sale on 02/05/2024, as compliance with OCGA § 9-11-65(b). On the afternoon of 01/29/2024, the plaintiff's undersigned attorney was contacted by the Court, requesting additional efforts to serve the defendant prior to consideration of the emergency application. On 01/30/2024, the Court denied the application indicating that it could be refiled after service had been made on the defendant.

## IV.
### Perfection of Service Under OCGA § 9-11-4 is Impracticable Due to Impending Foreclosure Sale on 02/05/2024

The plaintiff was contacted by the Court on 01/29/2024 regarding service on the defendant. The defendant in this action is a corporation having its registered agent and office in Fulton County, GA. This action involves in personam claims for damages and in rem claims for injunctive relief.

Under OCGA § 9-11-4, personal service may be made on the defendant's registered agent by the Fulton County Sheriff or by a certified process server appointed by the Gwinnett County Superior Court. Service through the Fulton County Sheriff is the only feasible option as the Gwinnett Superior Court does not

appoint permanent process servers. In each case filed before this Court, a private process server is required to complete all statutory requirements at OCGA § 9-11-4.1, including background checks and the submission and approval of applications by the Gwinnett County Sheriff, before they can obtain legal certification as a process server. Submission of the summons and Complaint to the Fulton County Sheriff's Office provides no assurance regarding the timeliness of service under time constraints imposed by this case. For these reasons, the plaintiff applied for emergency relief under OCGA § 9-11-65(b) to prevent the irreparable loss of his property, allowing for the grant of temporary ex parte relief on an emergency basis not to exceed thirty (30) days, and sought a hearing date on the request for interlocutory injunction, to allow time for service and to allow the defendant an opportunity to be heard in opposition.

## V.
## Plaintiff's Efforts to Satisfy the Court's Concerns Regarding Service

While the plaintiff has not been ordered to serve the defendant in a specific manner, under OCGA § 9-11-4(j), *"The methods of service provided in this Code section are cumulative and may be utilized with, after, or independently of other methods of service."* To the extent that OCGA § 9-11-65(b) is not specific regarding notice requirements to the defendant, OCGA § 9-11-4(j) further states that, *"In all cases or special proceedings where the requirements or procedure for service, or both, are not prescribed by law and in any situation where the provisions therefor are not clear or certain, the court may prescribe service according to the exigencies of each case, consistent with the Constitution."*

According to OCGA § 14-2-504(a), *"A corporation's registered agent is the corporation's agent for service of process, notice, or demand required or permitted by law to be served on the corporation*." To comply with the Court's directive to serve the defendant, the plaintiff sent the verified Complaint, application for emergency ex parte temporary restraining order, and summons to the defendant's registered agent by overnight delivery on 01/30/2024. The plaintiff also notified the defendant's attorney by email, attaching filed copies of the pleadings in this action and again requesting information on the defendant's availability to be heard in opposition to the plaintiff's application for relief. The summons and process were also sent by overnight mail to the Fulton County Sheriff on 01/30/2024, but personal service is unlikely to occur within the time constraints imposed by the 02/05/2024 foreclosure sale.

# VI.

## Irreparable Harm & Loss Resulting from Denial of Plaintiff's Application

The plaintiff in this action, Constantine Angus, purchased the property at 2128 E. Main Street, Snellville, GA 30078 on 02/07/2007. Angus obtained two (2) "intertwined" loans from Home America Mortgage, Inc. to finance the purchase of the property. The defendant claims to be the owner of the junior second position loan involving the plaintiff's execution of a promissory note in the principal amount of $46,950.00 and a second position security deed. After the real estate crash in 2008, the plaintiff's property value dropped substantially, and the second position loan became unsecured. Home America Mortgage, Inc. closed the loan account, charged the note off to "bad debt," and filed a Chapter 11 bankruptcy in 2009. Ownership of the promissory note and security deed on the second position loan is currently unknown and difficult to establish due to the intermediary involvement of MERS (Mortgage Electronic Registration System), the FDIC (Federal Deposit Insurance Corporation) and the lengthy proceedings in the U.S. Bankruptcy Court for the Middle District of Florida that involved Home America Mortgage, Inc. and other entities claiming to be predecessors in title, Colonial Bank and TBW Mortgage Corp.

As shown by assignments of the 02/07/2007 security deed in the recorded chain of title, after the loan was "charged off" to bad debt the security deed was "split" from the promissory note and the instruments were no longer sold together through the same chain of title. The plaintiff contends that collection of the note is barred due to expiration of the statutory limitations period, leaving only the security interest under the security deed. In late 2023, the plaintiff began receiving collection letters from the defendant, who claimed to be the owner of the promissory note and the security deed. Claiming ownership of the note, the defendant contacted the plaintiff through a third-party entity named "Madison Management," who claimed to be a "loan servicer" on the second position note that had been closed for over 13 years, thereby preventing the accrual of additional interest. The defendant and Madison Management demanded payment of more than $119,000, plus additional accruing interest on the note, issued for $46,950.00 in 2007.

The plaintiff states that his credit score is currently 785 and he has no other delinquent debts beyond the "zombie loan" that the defendant is currently attempting to enforce through foreclosure. In the absence of emergency ex parte relief, the defendant will be required to choose between losing his property to

foreclosure or filing a Chapter 13 bankruptcy petition to halt further collection and stop the sale. The filing of a Chapter 13 bankruptcy petition is for the reorganization and payment of legitimate debts and does not provide an adequate remedy to address the defendant's conduct in this action. Further, employing the automatic stay in bankruptcy to stop the foreclosure, without obtaining confirmation of a reorganization plan, is unnecessary under OCGA 9-11-65(b) and will have a dramatic and immediate negative effect on the plaintiff's credit score and produce additional financial hardship for the plaintiff.

## VII.

### The Defendant is Not Prejudiced by the Grant of Temporary Ex Parte Relief

The parties in this action have been communicating regarding the alleged indebtedness since no later than 10/02/2023. After the plaintiff's undersigned attorney requested that the defendant verify its ownership of the promissory note and security deed in this action by responding to questions regarding the inconsistencies and breaks in the recorded chain of title, the defendant served the plaintiff with a foreclosure notice without producing any additional information or documents establishing a clear chain of title.

The plaintiff's application for temporary ex parte relief only seeks to preserve the status quo until the defendant can be personally served and the parties are afforded a full hearing on the propriety of an interlocutory injunction during the pendency of this action. The plaintiff is not asking the court to divest the defendant of any substantive rights or interest in the property, or award damages or fees at this stage of the proceedings. The defendant's cost of initiating the foreclosure proceedings requires little more than payment of the publication fee and postage, which the plaintiff may be ordered to reimburse if he is unsuccessful in obtaining an interlocutory injunction.

It has been shown by the plaintiff that the defendant and its attorney are aware of these proceedings and have been provided with an opportunity to be heard in opposition on more than one occasion. Instead, they have remained silent and made no response to the plaintiff's attorney or to the filings in this action. If the facts stated in the plaintiff's pleadings were false, unsubstantiated, or presented a misleading or incomplete account of the facts, it is unlikely that the defendant would fail to provide any response, whatsoever, to the plaintiff's requests for relief when given the opportunity to do so.

**WHEREFORE**, based on this renewed application, which incorporates the facts, evidence, authority and exhibits in the plaintiff's verified Complaint, the previously filed application for emergency relief, and the 01/30/2024 Affidavit by William R. Carlisle, the plaintiff seeks the grant of his application for emergency ex parte restraining order by signing the proposed order submitted to the Court on 01/29/2024.

Date: 01/31/2024

Respectfully submitted,

*/s/ William R. Carlisle*
William R. Carlisle
Attorney for Appellant
GA Bar No.: 110382

**CARLISLE LAW FIRM**
4607 Cardinal Ridge Way
Flowery Branch, GA 30542
(770) 295-0175
wrclaw@gmail.com

E-FILED IN OFFICE - MX
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**24-A-00569-5**

**2/1/2024 10:28 AM**
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

CONSTANTINE ANGUS,          )     CIVIL ACTION FILE NO.
    Plaintiff,                )
                            )     24-A-00569-5
vs.                       )
                            )
CWS INVESTMENTS, INC.,     )
    Defendant.           )

### ORDER GRANTING PLAINTIFF'S RENEWED APPLICATION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND RULE NISI

This matter is before the Court on Plaintiff's Renewed Application for Emergency Ex

Parte Temporary Restraining Order and for Hearing on Plaintiff's Motion for Temporary

Injunction, filed on January 31, 2024. The Plaintiff has also submitted an affidavit of his counsel

showing that counsel has notified the Defendant's counsel of the proceedings and the ex parte

request and that counsel has served the Complaint and Application upon the Defendant by

overnight mail pursuant to O.C.G.A § 14-2-504(b). Upon consideration of the pleadings, the

Renewed Application and the Affidavit of Plaintiff's counsel, the Renewed Application is

GRANTED. The Defendant is restrained and enjoined from foreclosing, selling or exercising

any nonjudicial power of sale granted in the security deed at Gwinnett Deed Book 47597, page

348, against the real property and improvements at 2128 E. Main Street, Snellville, GA 30078,

for a period not to exceed thirty (30) days, unless extended with the consent of the parties. **This**

**Ex Parte Temporary Restraining Order shall expire on March 4, 2024 at 5:00 P.M.**

    The parties shall appear on the <u>20th</u> day of <u>February</u> 2024, at <u>1:30</u> <u>p</u>.m. at the ~~XXXX~~ Courtroom 1F

~~Building xxx of the~~ Gwinnett Justice & Administration Center, 75 Langley Drive, Lawrenceville,

Georgia in **Courtroom 203** for a hearing on Plaintiff's Motion for Temporary Injunction.

1

Order Granting Temporary Restraining Order
24-A-00569-5

The Plaintiff is directed to serve a copy of this Order upon Defendant and to file prompt proof of service.

SO ORDERED, this __1st__ day of _____February_____, 2024.


_____
KAREN E. BEYERS, JUDGE
Superior Court of Gwinnett County

William R. Carlisle
4607 Cardinal Ridge Way
Flowery Branch, GA 30542
Wrclaw@gmail.com

Order Granting Temporary Restraining Order
24-A-00569-5