## IN THE UNITED STATES DISTRICT COURT
## FOR THE NOTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CONSTANTINE ANGUS, | |
| Plaintiff, | |
| v. | Civil Action No.<br>1:24-cv-00478-ELR |
| CWS INVESTMENTS, INC., | |
| Defendant. | |

## DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 54 and Local Rule 54, Defendant CWS Investments, Inc. ("Defendant"), by and through its undersigned counsel, hereby moves for the entry of an order directing Plaintiff Constantine Angus ("Plaintiff") and/or Plaintiff's counsel to pay all costs incurred by Defendant in this action, as well as all Defendant's reasonable attorneys' fees expended. In support of this motion, Defendant respectfully shows the Court as follows:

## I. INTRODUCTION

The claims presented in this lawsuit—all of which were *dismissed* by virtue of this Court's January 2, 2025 Order [ECF No. 24] (the "Dismissal Order")—were brought by Plaintiff in bad faith, in an effort to harass Defendant, and in a spurious attempt to delay a foreclosure sale prompted by

*Plaintiff's actions.* As a result of Plaintiff's initiation, continuation, and expansion of this litigation, Defendant has been forced to incur significant attorneys' fees and costs to protect its interests in the relevant real property, as well as its rights under the applicable security deed. Additionally, Plaintiff and Plaintiff's counsel have acted in bad faith, multiplying these proceedings in unreasonable and dilatory fashion. Consequently, Defendant is entitled to recover from Plaintiff and/or Plaintiff's counsel all costs incurred in this action, and all reasonable attorneys' fees expended, currently in the amount of $45,450.00.

## II. RELEVANT BACKGROUND

Following almost a year of litigation and extensive briefing by Defendant[1] on various motions, this Court is well-aware of the factual allegations and procedural history of this case. In short, in February 2007, Plaintiff obtained two loans to purchase the relevant real property located at 2128 East Main Street, Snellville, Georgia 30078 (the "Property"). (Plaintiff's First Amended Complaint [ECF No. 12] (the "Amended Complaint") ¶ 54). The second of these loans is secured by a security deed (the "Security Deed"), under which Plaintiff, as "Borrower," granted a security interest in the Property to Home America Mortgage, Inc. ("HAM"), as "Lender." (*Id.* ¶¶ 6, 59; Plaintiff's

---

[1]    Indeed, **only** by Defendant. *See infra* § II(B)(vi).

Verified Complaint [ECF No. 1–1 at 3-57] (the "Original Complaint") Ex. 2). HAM's rights and interests in the Security Deed were thereafter transferred to several parties, eventually being assigned to Defendant on August 14, 2023. (*Id.* ¶ 7; Original Compl. Ex. 8). As such, Defendant is the current Lender under the Security Deed.

### A. **Plaintiff's Default on the Loan and Defendant's Lawful Exercise of its Remedies Under the Security Deed.**

Around the time that Defendant was assigned the rights and interests as the Lender under the Security Deed, Plaintiff stopping paying amounts due under the secondary loan secured thereby. (*See* Original Compl. Ex. 5; *cf.* Am. Compl. ¶ 13). Plaintiff does **not** dispute that he has ceased paying amounts he agreed to pay under the secondary loan, thereby rendering him in default under the secondary loan and Security Deed. Instead, Plaintiff claims, in self-serving fashion, that Defendant somehow cannot collect upon the secondary loan or Security Deed. (*See, e.g.,* Am. Compl. ¶ 17). Plaintiff's decision not to cure his default upon the secondary loan and Security Deed consequently caused Defendant to deliver to Plaintiff a "Notice of Foreclosure Sale and Acceleration of Loan" letter (the "Notice of Foreclosure") on January 6, 2024. (*Id.* ¶ 35; Original Compl. Ex. 1). The Foreclosure Notice provided that the Property was to be sold at a nonjudicial foreclosure sale, as authorized under the Security Deed. (*Id.* ¶ 36; Original Compl. Ex. 1).

Indeed, Section 21 of the Security Deed provides that in the event a default is not cured on or before the date specified in the Notice of Foreclosure, Defendant, as Lender, may, among other remedies, (*i*) require immediate payment in full of all sums secured by the Security Deed, and (*ii*) invoke the power of sale granted to Defendant by Plaintiff, as Borrower. (Original Compl. Ex. 2 at 9, § 21). Moreover, and specifically relevant hereto, Defendant, as Lender, is "entitled to collect *all expenses* incurred in pursuing the remedies provided in this Section 21, including, but not limited to, ***reasonable attorneys' fees***." (*Id.* at 10, § 21 (emphasis added)). By delivering the Notice of Foreclosure, Defendant pursued the remedies provided in Section 21, thereby entitling it to collect **all** expenses incurred in so pursuing, including, but not limited to, reasonable attorneys' fees. (*See id.*). Pursuant to the Notice of Foreclosure, the nonjudicial foreclosure sale of the Property was to occur on February 6, 2024.

## B. Plaintiff and Plaintiff's Counsel's Initiation, Continuation, and Expansion of Litigation in Bad Faith.

The Foreclosure Notice specifically provided that Plaintiff could stop the foreclosure sale by paying the amount owed under the secondary loan in full. (*See* Original Compl. Ex. 1). Instead of doing so, Plaintiff chose to initiate baseless litigation in the Superior Court of Gwinnett County, Georgia, by filing the Original Complaint on January 19, 2024. In the Original Complaint,

Plaintiff argues that Defendant's actions are violations of state and federal law, rather than natural consequences stemming from Plaintiff's *choice* to stop paying amounts owed under the secondary loan. Specifically, Plaintiff asserted state law claims for fraud and wrongful attempt to foreclose, as well as a federal law claim for violation of the Fair Debt Collection Practices Act (FDCPA). All claims presented in the Original Complaint were brought in bad faith to harass Defendant, and evidenced a pattern of wrongful conduct that continued throughout this litigation, as described more fully below.

(i) The Baseless FDCPA Claim

In the Original Complaint, and then again in the Amended Complaint, Plaintiff asserted a claim against Defendant for violation of the FDCPA. (*See* Original Compl. Count B, ¶¶ 59-66; Am. Compl. Count B, ¶¶ 98-109). But as noted in Magistrate Judge McBath's Final Report and Recommendation [ECF No. 21] (the "R&R")—which was adopted as the opinion of the Court in the Dismissal Order—"the FDCPA does **not** apply to Defendant." (R&R at 20 (emphasis added)). As such, even accepting the allegations of Plaintiff's Amended Complaint as true, Defendant is not subject to the provisions of the FDCPA. (*Id.* at 20). Accordingly, the FDCPA claim was brought against Defendant without any possible grounding in law or fact, but instead as an attempt to prevent Defendant from exercising its available remedies under the Security Deed.

(ii) Fabricated Facts in the Motion for Contempt

Shortly after filing the Original Complaint asserting Plaintiff's uncolorable FDCPA claim, Plaintiff likewise sought and obtained an *ex parte* temporary restraining order (TRO), thereby preventing Defendant from foreclosing on the Property. [*See* ECF No. 1–1 at 59-88]. In response, Defendant removed this action to this Court [*see* ECF No. 1], and filed an emergency motion to dissolve the TRO on February 2, 2024 [*see* ECF No. 2]. Defendant's emergency motion was set for a hearing before the Court on the morning of February 6, 2024, the date of the planned foreclosure sale. [*See* ECF No. 5]. Just two (2) days prior to that hearing, Plaintiff filed a Motion for Contempt [ECF No. 4], seeking *sanctions* against Defendant.

In the Motion for Contempt, Plaintiff, through his counsel, submitted numerous fabricated and inaccurate claims to this Court. *Contra* FED. R. CIV. P. 11(b)(3) (by signing and filing a motion, an attorney certifies that to the best of his knowledge, information, and belief, "the factual contentions have evidentiary support"). For example, Plaintiff falsely asserted that Defendant has "failed to comply with" and "intentionally violat[ed]" the TRO (Mot. for Contempt at 2), thereby defying a court order, which is punishable by <u>criminal contempt</u>. *See* 18 U.S.C. § 401. Moreover, Plaintiff and Plaintiff's counsel falsely claimed that by using a supposed third-party vendor, Auction.com (which Defendant did **<u>not</u>**), Defendant had no ability to stop the foreclosure

sale, thereby causing a violation of the TRO. (*See* Mot. for Contempt at 3; Defendant's Motion to Dismiss the Amended Complaint [ECF No. 15] (the "Second Motion to Dismiss") at 8 n.2).

Ultimately, the fabricated assertions throughout the Motion for Contempt were proffered in a deceptive attempt to have this Court believe Defendant was willfully violating the TRO. Accordingly, when the Motion for Contempt came before the Court during the hearing on February 6, 2024, Plaintiff's counsel did not cite any evidence in support thereof (of which there was none), instead ***withdrawing*** the motion. [*See* ECF No. 6]. The Motion for Contempt was a false filing by Plaintiff, by and through Plaintiff's counsel, designed to obtain a favorable ruling from this Court.

(iii) The Frivolous Bankruptcy Petition

In addition to the Motion for Contempt, and in a further attempt to stymie Defendant, Plaintiff filed a frivolous Chapter 13 bankruptcy petition just **minutes** before the aforementioned hearing on February 6, 2024. *See* Case No. 24-40432-elm12 (Bankr. N.D. Tex.); (Defendant's Partial Objection to R&R [ECF No. 23] (the "R&R Objection") at 3-4 n.1). Plaintiff's bankruptcy petition was filed in bad faith; specifically to obtain the resultant automatic stay and thereby ensure that regardless of this Court's ruling on Defendant's emergency motion to dissolve the TRO, Defendant would not be able to foreclose on the Property as planned. Indeed, just **two (2) days** following this Court's denial of

Defendant's emergency motion to dissolve the TRO—on February 8, 2024—the bankruptcy petition was dismissed due to Plaintiff's failure to complete credit counseling. [*See* Bankr. Dkt. #7]; (R&R Objection at 3-4 n.1). Plaintiff never intended to pursue bankruptcy in good faith, as evidenced by a complete lack of substance in the bankruptcy filing schedules, and only did so to forestall Defendant's right to foreclose on the Property under the Security Deed.

### (iv) The Dilatory Amended Complaint

Upon this Court's ruling denying Defendant's emergency motion to dissolve the TRO, Defendant did *not* pursue the foreclosure sale on February 6, 2024—contrary to the false assertions levied in the Motion for Contempt. Instead, Defendant engaged in this litigation in good faith by timely submitting the following on April 8, 2024: its (*i*) Verified Answer and Defenses [ECF No. 8]; (*ii*) Motion to Dismiss for Failure to State a Claim [ECF No. 9] (the "First Motion to Dismiss"); and (*iii*) Motion to Stay All Discovery [ECF No. 10]. Plaintiff did not respond to any of the above, and instead amended his Original Complaint as a matter of right on April 16, 2024.

While Plaintiff was admittedly within his rights to amend his Original Complaint—*see* FED. R. CIV. P. 15(a)(1)(B)—the *nature* of the Amended Complaint nevertheless demonstrates bad faith. Plaintiff did not add any new parties, alter his asserted causes of action, nor incorporate any additional, material factual allegations to counter the arguments made in Defendant's

First Motion to Dismiss.[2] Instead, as Plaintiff and Plaintiff's counsel's subsequent behavior showcases, the Amended Complaint was filed solely to **prolong** this litigation further, thereby barring Defendant from exercising its remedies provided under the Security Deed.

(v) The Duplicative Parallel Proceedings

As noted, Plaintiff did not add any additional parties or claims to the Amended Complaint, despite the opportunity to do so. Despite this, Plaintiff filed a *second*, nearly identical complaint against Defendant's *loan servicer* and Defendant's *counsel* on July 2, 2024 in the Superior Court of Cobb County, Georgia. That action (hereinafter referred to as "*Angus II*")[3], which was subsequently removed to this Court on August 16, 2024, asserts **identical** causes of action as the ones alleged herein, based on the **same** factual allegations plead in the Amended Complaint. By choosing to file the duplicative *Angus II* complaint, rather than by simply adding Defendant's loan servicer and counsel to the Amended Complaint herein, Plaintiff and Plaintiff's

---

[2]    For example, in the First Motion to Dismiss, Defendant argued that Plaintiff, as a matter of law, could not dispute the validity of the assignment of the Security Deed to Defendant. (*See, e.g.,* Original Mot. to Dismiss at 12-13). In the Amended Complaint, Plaintiff added several new allegations to attempt to demonstrate that the Security Deed was not validly assigned. (*See, e.g.,* Am. Compl. ¶ 81). But these allegations, even when accepted as true, do not address the *legal* impediment that a debtor **cannot** dispute the validity of the assignment of a security deed. *See Ames v. J.P. Morgan Chase Bank, N.A.*, 783 S.E.2d 614, 620 (Ga. 2016); *Durham v. Aerial Funding, LLC*, No. 21-13847, 2022 WL 2388423, at *4 (11th Cir. July 1, 2022).

[3]    *Constantine Angus v. Madison Management Services, LLC, and Freeman, Mathis, & Gary, LLP*, No. 1:24-cv-03626, LMM-LTW (N.D. Ga.).

counsel have mired Defendant and its related privies in parallel legal proceedings, thereby forcing Defendant to expend even more resources.

(vi) The Bad Faith Failure to Participate in Litigation

Regardless of Plaintiff and Plaintiff's counsel's aforementioned procedural gimmicks, Defendant has continuously engaged in this litigation in good faith. Defendant has undertaken significant efforts to protects its interests in the Property and rights under the Security Deed, both of which were threatened by Plaintiff's initiation and continuation of this action and *Angus II*. To that end, and relevant hereto, Section 8 of the Security Deed provides, in relevant part, that:

> [If] there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument … then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to … paying ***reasonable attorneys' fees to protect its interest in the Property and/or rights under the Security Instrument***[.]
>
> …
>
> Any amounts disbursed by Lender under this Section 8 shall become ***additional debt of Borrower*** secured by this Security Instrument if allowed under Applicable Law.

(Original Compl. Ex. 2 at 6, § 8 (emphasis added)). Because Defendant has pursued this litigation in good faith to protects its interests in the Property and

rights under the Security Deed—which were threatened by *Plaintiff's initiation and continuation of this action*—Defendant is entitled to all reasonable attorneys' fees incurred.

Defendant's good faith participation in this litigation further entitles Defendant to an award of attorneys' fees in light of Plaintiff's bad faith lack of participation in their own lawsuit. Following Plaintiff's filing of the Amended Complaint on April 16, 2024, Plaintiff has not engaged in ***any way*** with this action. Defendant did <u>not</u> oppose or even respond to Defendant's Second Motion to Dismiss [ECF No. 15]; did <u>not</u> oppose or even respond to Defendant's renewed Motion to Stay [ECF No. 16]; and did <u>not</u> oppose or even respond to the R&R [ECF No. 21] *dismissing* Plaintiff's claims. By filing the Amended Complaint and then sitting on his hands, Plaintiff has forced Defendant to engage in over eight (8) months of prolonged litigation, all while Plaintiff **<u>did</u> <u>nothing</u>** and continued to possess the Property and avoid foreclosure proceedings. Plaintiff therefore has not pursued this case in good faith, evidencing a clear attempt to mire Defendant in litigation that threatens Defendant's rights and interests in the Property and Security Deed.

In light of the above, both Plaintiff and Plaintiff's counsel have engaged in a persistent course of bad faith conduct, designed to harass Defendant with continued litigation and to forestall inevitable foreclosure proceedings in response to Plaintiff's uncontroverted failure to meet his obligations under the

secondary loan and Security Deed.

## III. ARGUMENT AND CITATION TO AUTHORITY

### A. Standard for Granting Motion for Attorney's Fees and Costs.

Pursuant to Federal Rule of Civil Procedure 54(d), a party may move for the recovery of its reasonable attorneys' fees and costs of litigation incurred. Unless a statute, rule, or court order specifically provides otherwise, costs other than attorneys' fees generally "***should*** be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1) (emphasis added). Indeed, "Rule 54(d)(1) codifies a venerable presumption that prevailing parties are entitled to costs." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013). Defendant is the prevailing party under the Court's Dismissal Order, and thus, as an initial matter, is entitled to recover all costs other than attorneys' fees incurred[4].

The recovery of attorneys' fees, by contrast, requires that a party make a specific motion specifying the grounds upon which it is entitled thereto. *See* FED. R. CIV. P. 54(d)(2). As a general rule of the American legal system, each party is responsible for its own attorneys' fees (*i.e.*, the "American Rule"). *In re Home Depot Inc.*, 931 F.3d 1065, 1078 (11th Cir. 2019) (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254 (2010)). However, there are three major exceptions to the American Rule—namely: (1) when a statute grants

---

[4]    Defendant's Bill of Costs is filed contemporaneously herewith.

courts the authority to direct the losing party to pay attorney's fees (the "<u>statutory exception</u>"); (2) when the parties agree in a contract that one party will pay attorney's fees (the "<u>contractual exception</u>"); and (3) when a court orders one party to pay attorney's fees for acting in bad faith (the "<u>bad faith exception</u>"). *See id.*, *accord Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257-59 (1975). To this end, district courts have "great latitude in formulating attorney's fees awards." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011) (citations omitted).

In the present case, all three exceptions to the American Rule are present, such that Defendant is entitled to recover all (or at least the statutory minimum percentage) of its reasonable attorneys' fees incurred. *First*, Plaintiff's execution of the Security Deed warrants Defendant's recovery of attorneys' fees under the contractual exception. *Second*, the bad faith conduct of Plaintiff and Plaintiff's counsel throughout this litigation warrants Defendant's recovery of attorneys' fees under the statutory exception and bad faith exception.

## B. <u>Defendant's Recovery of Attorney's Fees is Warranted Under the Contractual Exception.</u>

District courts have great latitude to award attorneys' fees where the parties have agreed to such relief in a contract. *See In re Home Depot*, 931 F.3d at 1078. Here, Plaintiff agreed to this relief by executing the Security Deed,

the rights under which were subsequently transferred and assigned to Defendant. *See Higginbotham v. Knight*, 719 S.E.2d 1, 3 (Ga. Ct. App. 2011) ("A deed is a contract."). The Security Deed contains two specific fee-shifting provisions, both of which are applicable. Under Section 21, Defendant is entitled to "*all expenses*" incurred in pursuing the available remedies under the Security Deed, "including, but not limited to, ***reasonable attorneys' fees***." (Original Compl. Ex. 2 at 10, § 21 (emphasis added)). To that end, Defendant has been forced to incur significant attorneys' fees in pursuing the nonjudicial foreclosure remedies provided by the Security Deed, through and including Defendant's attempts to dissolve the TRO before this Court.

Moreover, Section 8 of the Security Deed provides that Defendant is entitled to its "***reasonable attorneys' fees to protect its interest in the Property and/or rights under the Security [Deed]***" when there is a "legal proceeding" that might significantly affect such rights and interests. (*Id.* at 6, § 8 (emphasis added)). Both Plaintiff's Original and Amended Complaints take direct aim at Defendant's interests in the Property and rights under the Security Deed. Defendant has thus been forced to incur substantial attorneys' fees to protect such rights and interests throughout this litigation, which entitles Defendant to recover such fees under Section 8 of the Security Deed.

Based on the foregoing contractual provisions, Defendant is entitled to **<u>all</u>** reasonable attorneys' fees incurred in exercising its remedies under Section

21, and in otherwise litigating this action. That being said, in the event this Court determines that Defendant is not entitled to all reasonable attorneys' fees incurred, an award equal to a certain percentage of that amount is provided under Georgia law. O.C.G.A. § 13-1-11 provides statutory grounds for the recovery of attorneys' fees under a "note or other evidence of indebtedness," which includes a security deed. *See Colonial Bank v. Boulder Bankcard Processing, Inc.*, 563 S.E.2d 492, 497 n.10 (Ga. Ct. App. 2002). Where, as here, the security deed provides for the payment of reasonable attorney's fees *without* specifying any specific percent:

> such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness [*i.e.*, $75.00] and 10 percent of the amount of principal and interest owing thereon in excess of $500.00.

O.C.G.A. § 13-1-11(a)(2). Therefore, at a <u>minimum</u>, Defendant is entitled to an award of Defendant's reasonable attorneys' fees incurred for the collection of the principal and interest owing in the amount of $109,835.00 as of January 5, 2025. Under this statute, Defendant would be entitled to at least $11,008.50.

The contractual exception to the American Rule is accordingly satisfied in this instance, thereby warranting an award of all, or at least the statutory minimum percentage, of Defendant's reasonable attorneys' fees under the provisions of the Security Deed.

## C. **Defendant's Recovery of Attorney's Fees and Costs is Warranted Under the Statutory and Bad Faith Exceptions.**

As noted, district courts have broad discretion to award attorneys' fees to a party when permitted by an applicable statute, or where a party acts in bad faith. *See In re Home Depot*, 931 F.3d at 1078; FED. R. CIV. P. 54(d)(2)(B)(ii). Here, two federal statutes—both of which act as statutory codifications of the bad faith exception—provide adequate bases upon which Defendant can recover reasonable attorneys' fees incurred. *First*, the fee-shifting provision of the FDCPA warrants an award of attorneys' fees due to the bad faith conduct of Plaintiff. *Second*, the fee-shifting statute regarding counsel's liability for excessive costs warrants an award of attorneys' fees due to the bad faith conduct of Plaintiff's attorney.

### i) Defendant is Entitled to Attorneys' Fees under 15 U.S.C. § 1692k(a)(3) due to the Bad Faith Conduct of Plaintiff

The FDCPA contains a fee-shifting provision, under which if an FDCPA action is "brought in ***bad faith and for the purpose of harassment***, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3); *see also Marx*, 568 U.S. at 380[5]. The Eleventh Circuit has not interpreted the meaning of "in bad faith

---

[5]    Importantly, in *Marx*, the United States Supreme Court ruled that a district court may award <u>costs</u> other than attorney's fees to a prevailing defendant in an FDCPA case ***without*** finding that the plaintiff brought the case in bad faith and for the purpose of harassment, thereby declining to alter Rule 54(d)(1) in the FDPCA context. 568 U.S. at 381-89.

and for the purpose of harassment" in the context of § 1692k(a)(3), although the Court of Appeals has clarified that this language applies only to the conduct of a <u>plaintiff</u>, and not to the conduct of a plaintiff's attorney. *See Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 924-25 (11th Cir. 2016). Regardless, § 1692k(a)(3) codifies the well-established understanding that federal courts have inherent power to award attorney's fees when a party brings an action in bad faith. *Marx*, 568 U.S. at 382, *accord Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991).

Here, Plaintiff initiated, continued, and expanded this litigation in bad faith and to harass Defendant. In his Original Complaint, Plaintiff asserted a baseless FDCPA claim against Defendant, despite the clear inapplicability of that statute. (*See* R&R at 20, *adopted as the opinion of the Court in* Dismissal Order). When Defendant alerted Plaintiff to this deficiency in Defendant's First Motion to Dismiss, Plaintiff responded by filing an Amended Complaint containing the exact same unactionable FDCPA claim. Moreover, Plaintiff filed a fabricated Motion for Contempt and a frivolous Chapter 13 bankruptcy petition to harass Defendant and delay Defendant's exercise of contractual remedies under the Security Deed. While Defendant has continuously engaged in this litigation in good faith, Plaintiff has not participated or done *anything* in this action since April 16, 2024.

Accordingly, all of the above-referenced conduct demonstrates Plaintiff's

manifest bad faith intent to harass Defendant, specifically by stalling Defendant's ability to commence the foreclosure on the Property.

### ii) Defendant is Entitled to Attorneys' Fees under 28 U.S.C. § 1927 due to the Bad Faith Conduct of Plaintiff's Attorney

As previously noted, § 1692k(a)(3) applies only to the bad faith conduct of a plaintiff, not a plaintiff's attorney. *See Diaz*, 643 F. App'x at 924-25. That being said, another federal statute—28 U.S.C. § 1927—allows for the recovery of a defendant's attorney's fees based on the conduct of a plaintiff's *attorney*. To warrant an award of attorneys' fees under § 1927: (*i*) the plaintiff's attorney must engage in unreasonable and vexatious conduct tantamount to bad faith; (*ii*) the conduct must multiply the proceedings by causing proceedings that would not have been conducted otherwise; and (*iii*) the amount of the attorneys' fee award must not exceed the costs occasioned by the objectionable conduct. *See Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010); *Peterson v. BMI Refractories*, 124 F.3d 1386, 1395-96 (11th Cir. 1997). In context of § 1927, "bad faith" is measured under "an objective standard that is satisfied when an attorney knowingly and recklessly pursues a frivolous claim." *Peer*, 606 F.3d at 1314.

Plaintiff's counsel has engaged in unreasonable and vexatious conduct tantamount to bad faith throughout these proceedings. The Motion for Contempt signed and filed by Plaintiff's counsel contained numerous

knowingly false and inaccurate representations, designed to improperly influence this Court's decision regarding Defendant's emergency motion to dissolve the TRO. Likewise, by filing the duplicative Amended Complaint, as well as the nearly-identical complaint in *Angus II*, Plaintiff's counsel has multiplied proceedings that would not have occurred but for Plaintiff and Plaintiff's counsel's bad faith conduct. Furthermore, the amount of the attorneys' fees sought herein is reasonable (*see infra* § III(D)), and does not exceed the costs occasioned by Plaintiff's counsel's objectionable conduct.

It follows from the above discussion that by reading § 1692k(a)(3) and § 1927 in tandem, this Court may award Defendant its reasonable attorneys' fees based on the bad faith conduct of Plaintiff *and* Plaintiff's counsel. Accordingly, Defendant is entitled to all reasonable attorneys' fees incurred in this action as a result of the bad faith conduct of Plaintiff and Plaintiff's counsel.

## D. <u>Defendant's Attorneys' Fees are Reasonable and Necessary.</u>

The starting point for calculating a reasonable attorneys' fees award is a determination of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Spurlock v. Complete Cash Holdings, LLC*, 540 F. Supp. 3d 1201, 1205 (N.D. Ga. 2021) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Indeed, an attorneys' fees award based upon a reasonable number of hours spent on a case multiplied by a reasonable hourly

rate is "**strongly presumed** to be reasonable." *Id.* (quoting *Resolution Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993)). As noted in the Declaration of Brian S. Goldberg (the "Declaration") attached hereto as **Exhibit "1"**, the number of hours spent by Defendant's counsel on this civil action was reasonable and necessary to ensure Defendant would prevail herein. (Decl. ¶ 12). Moreover, the hourly rates assessed by Defendant's counsel are equal to or less than the prevailing rates in the Atlanta, Georgia metropolitan area for legal representation in similar commercial and real estate matters. (*Id.* ¶ 9). Thus, the $45,916.24 amount of attorneys' fees sought by Defendant is reasonable.

### III. CONCLUSION

Based on the foregoing, Defendant, as the prevailing party under the Dismissal Order, is entitled to recover from Plaintiff all costs listed in the Bill of Costs filed contemporaneously herewith. A further award of all reasonable attorneys' fees incurred by Defendant is warranted under the terms of the Security Deed, and as a result of the bad faith conduct of Plaintiff and Plaintiff's counsel. In the alternative, an award of the statutory minimum percentage of all reasonable attorneys' fees incurred by Defendant pursuant to O.C.G.A. § 13-1-11 is merited.

Respectfully submitted this 16th day of January, 2025.

*/s/ Brian S. Goldberg*
Brian S. Goldberg
Georgia Bar No. 128007
Cameron N. Regnery
Georgia Bar No. 333041

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(T) 770-818-0000
(F) 833-330-3669
Brian.Goldberg@fmglaw.com
Cameron.Regnery@fmglaw.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the within and foregoing **DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS AND MEMORANDUM OF LAW IN SUPPORT** has been prepared in compliance with Local Rule 5.1(C) in Century Schoolbook, 13-point font. I further certify that the foregoing is limited in length to twenty-five (25) pages, and complies with all Instructions for Cases assigned to the Honorable Eleanor L. Ross.

This 16th day of January, 2025.

<u>*/s/ Brian S. Goldberg*</u>
Brian S. Goldberg
Georgia Bar No. 128007
Cameron N. Regnery
Georgia Bar No. 333041

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(T) 770-818-0000
(F) 833-330-3669
Brian.Goldberg@fmglaw.com
Cameron.Regnery@fmglaw.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that I have this day electronically submitted the foregoing

**DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS AND**

**MEMORANDUM OF LAW IN SUPPORT** to the Clerk of Court using the

CM/ECF filing system, which will automatically send electronic notification of

the same to the following counsel of record:

William R. Carlisle
CARLISLE LAW FIRM
4607 Cardinal Ridge Way
Flowery Branch, GA 30542
(770) 295-0175
wrclaw@gmail.com
*Attorney for Plaintiff*

This 16th day of January, 2025.

*/s/ Brian S. Goldberg*
Brian S. Goldberg
Georgia Bar No. 128007
Cameron N. Regnery
Georgia Bar No. 333041

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(T) 770-818-0000
(F) 833-330-3669
Brian.Goldberg@fmglaw.com
Cameron.Regnery@fmglaw.com

*Attorneys for Defendant*